ARTHUR MILAM *v.* PAUL SETTLE *et al.*

(CC 689)

Submitted September 19, 1944. Decided December 5, 1944.

*Horace S. Meldahl,* for plaintiff.

*Watts, Poffenbarger & Bowles, H. D. Rollins, Martin C. Bowles, Roy S. Samms, Jr.,* and *Herbert W. Richardson,* for defendants.

Fox, JUDGE:

The plaintiff, Arthur Milam, seeking to recover from the defendants, Paul Settle and others, damages for an alleged conspiracy, and acts performed thereunder to his prejudice, instituted his action of trespass on the case, in the Circuit Court of Kanawha County. The summons in the action, returnable to August Rules, 1943, commands the Sheriff of said county to "summon Paul Settle, T. R. Pickett, Harry Settle, J. W. McCormick, Ernest King, Charlie Palmer, Tom Bonham, R. M. Hardiman, S. R. Joyner, P. L. Peek, W. H. Ryan, George Carte, and others too numerous to mention, Members Bricklayers, Masons, Marble Masons, Tile Setters and Terrazzo Workers Local Union No. 9, of Charleston, West Virginia, and Bricklayers, Masons and Plasterers' International Union of America, unincorporated associations, if they be found within your bailiwick, * * *." This process was served on the individual defendants, and return of service thereon shows that said process was served upon them in their individual

capacities. Other than the service on the individual defendants, described as members of the two labor unions, there is no service of process on said labor unions, which, for the purposes of this opinion, will be referred to as "Local Union No. 9" and "International Union."

The International Union, appearing specially for the purpose, filed its motion to quash the summons on the grounds that (1) being an unincorporated association, it is not a legal entity, and cannot be sued in an action at law; and (2) delivery of said summons to its members was in no sense a service on it. It then filed what it terms an "Affidavit for Non-Joinder", in which it sets up that any liability to the plaintiff was joint, and that all the members of the association were not made parties to said action. It also filed its plea in abatement to the jurisdiction of the court to hear the action, in which it avers that service of said process on the individual members of the association was not legal service on the association for reasons stated in the plea; and, finally, filed its demurrer to the declaration and assigned as grounds therefor: (1) That it was not a legal entity; and (2) the failure to join as defendants all the members of the association. Appearing specially for the purpose, Local Union No. 9 filed its motion to quash and its plea in abatement, which set up the same defenses as those relied on in like pleas filed by the International Union aforesaid.

The individual defendants aforesaid, appearing specially for the purpose, filed their joint plea in abatement, averring that the court ought not to take further cognizance of the action, on the ground that the summons or process commencing the action was in the name of and served upon the individual defendants as members of the two unincorporated associations aforesaid; that the declaration does not allege a cause of action against them individually; and, further, that more than two hundred fifty persons compose the membership of Local Union No. 9, and many thousands that of the International Union; that some of the defendants were officers and representatives of both Local Union No. 9 and International Union; and that the

officers thereof had control, supervision, authority and jurisdiction over each and every member of Local Union No. 9, as well as the officers and representatives thereof. The individual defendants also tendered their joint and several demurrers to the declaration on the grounds: (1) That the declaration does not state a cause of action against the said defendants as individuals, but only against them as members of the unincorporated associations aforesaid; (2) that the declaration failed to aver that plaintiff had exhausted his remedy within the two unincorporated associations aforesaid, as he could have done under the constitution and by-laws of each; and (3) and (4) that the allegations with respect to alleged libel and slander were insufficient, in not setting up the exact words written or spoken, and in not identifying the person or persons by whom written or spoken. The plaintiff tendered in open court separate demurrers to the several pleas in abatement aforesaid, and moved that the joint and several demurrers of the individual defendants to the declaration be overruled. The several motions, pleas and demurrers were filed at September Rules, 1943, and no objection is made thereto as to the time of their filing, or the form thereof.

The declaration is lengthy, and it would serve no good purpose to attempt to set it out in great detail. Briefly, it avers the good repute of the plaintiff; his membership in Local Union No. 9, and the International Union, and his work as supervisor of construction on buildings in and around Charleston, West Virginia, in which members of the two unions worked under his supervision; and that the defendants, well knowing these facts, maliciously and wickedly contriving to injure him in his good name and credit, bring him into public scandal, infamy, and disgrace, deprive him of his usual means of livelihood and employments, and cause him great mental pain and anguish, and otherwise injure, oppress, impoverish, vex, and ruin him, did, in February, 1943, without any justification whatever, conspire and agree among themselves, on behalf of all members of Local Union No. 9 and the International Union, aforesaid, to boycott plaintiff and deprive him of his

livelihood and deprive him of his rights as a member of said Local Union No. 9 and the International Union, by adopting a resolution "to prohibit members of №9 W. Va. to work under your supervision in any capacity for the period of 3 years", by reason of which, as the declaration alleges, members of unions in the State of West Virginia, and throughout the United States and Canada, were required to refuse to work under the supervision of the plaintiff; that his memberships in said unions were cancelled; his dismissal from his then employment demanded of his employer; permission to secure any employment refused; and many false accusations maliciously made in accordance with a premeditated plot and plan on the part of some of the members of the unions to injure and destroy the plaintiff. Then followed a reference to certain alleged illegal actions within the union, which the plaintiff understood were relied upon by the defendants as an excuse or justification for the acts alleged against them.

On February 26, 1944, the case came on to be heard on the several motions, pleas and demurrers noted above, and the following rulings made, to which due exceptions were taken by the parties prejudicially affected: (1) The demurrers of the plaintiff to the pleas in abatement filed by local Union No. 9 and International Union were overruled, on the ground that said unions were not legal entities against which, in the absence of a statute authorizing the same, an action could be maintained or jurisdiction obtained in an action against them by the service of process on some member thereof, under the doctrine of virtual representation; (2) the demurrer of the plaintiff to the joint and several pleas in abatement by the individual defendants was sustained, the court holding that the action could be maintained against said defendants, jointly and severally, as individuals, for the tortious acts alleged in the declaration, but that said action could not be maintained against them in any representative capacity pertaining to the unions involved; (3) the joint and several demurrers of the individual defendants to the declaration were sustained "in so far as any representative capacity with regard to

said unions is concerned", but "overrules said demurrers in so far as individual, joint and several action is concerned". The effect of these rulings was, of course, to leave the action in such status as that it could only be tried as an action against the individual defendants named in their personal capacity, as distinguished from any representative capacity. In this situation, the trial court, being of opinion that the matters of law passed upon should be certified to this Court for decision, upon its own motion and that of plaintiff, has certified to the court the following questions:

"1. That labor unions, organized as unincorporated associations, cannot be proceeded against in an action of this kind.

"2. That in the absence of statute service of process upon some of the members of a labor union will not, on the principle of virtual representation, give jurisdiction over the union.

"3. That individual members of a union cannot be liable in a representative capacity.

"4. That individual defendants may be jointly and severally liable for torts committed in furtherance of a common purpose, based upon a prearrangement entered into among them.

"5. That a labor organization is not an entity which courts of law may recognize in the absence of statute.

"6. That the declaration states a cause of action against the defendants as individuals.

"7. That it is not necessary for the plaintiff to allege in his declaration that he has exhausted all remedies available under the constitution and by-laws of a union where the wrongful acts alleged indicate no further action within the union would be availing."

The first question presented is whether Local Union No. 9 or the International Union was intended to be impleaded as party defendant to the action. We think it clear that they were not so impleaded, and were not in-

tended to be. The other defendants were individually named, and they were described as members of the two unions. This was merely *descriptio personae,* by which is meant "a word or phrase used merely for the purpose of identifying or pointing out the person intended, and not as an intimation that the language in connection with which it occurs is to apply to him only in the official or technical character which might appear to be indicated by the word". 26 C. J. S. 1235. The two unions were not thereby named as parties defendant in the action. The issuance of process against an individual defendant, and merely describing him as a public official, officer or agent of a corporation, or the agent of an individual, does not in any wise implead him in his official capacity, or in any representative capacity. Of course, public officials may be proceeded against in their official capacity, but they must be impleaded as such, in which case the rule of *descriptio personae* does not apply. The word "as" is of importance in such cases, and the failure to use it in this instance indicates to us that the individual defendants were not intended to be sued in any representative capacity. The rule has been applied in this State to conveyances of real estate. *Donahue* v. *Rafferty,* 82 W. Va. 535, 96 S. E. 935; *Hyman* v. *Swint,* 94 W. Va. 627, 119 S. E. 866; *Hardesty* v. *Fairmont Supply Co.,* 123 W. Va. 161, 14 S. E. 2d 436; and to bills and notes, in *Rand & Minsker* v. *Hale,* 3 W. Va. 495; *Bank* v. *Lewis,* 28 W. Va. 273; *Thomson & Lively* v. *Mann,* 53 W. Va. 432, 44 S. E. 246. See also 8 Am. Jur. 221. We see no reason why the rule adopted in those cases should not be applied to the case at bar. Furthermore, we do not understand the theory of the plaintiff to be that he can implead the two unincorporated unions or associations by name; but that, without doing so, he can by suing some member thereof reach the assets of the associations. We hold, therefore, that the plaintiff's action is one solely against the individuals named as defendants, in their personal capacity, as distinguished from any representative capacity in connection with the two associations, and that

the use of the names of the said two associations was merely *descriptio personae.*

But if it were to be held that Local Union No. 9 and the International Union were impleaded by name, and process had against them by service thereof on some of their members, it would avail nothing. An unincorporated association cannot be sued by its name in this State. In the case of *Simpson & Smith* v. *Locomotive Engineers,* 83 W. Va. 355, 98 S. E. 580, it was held in point 1 of the syllabus: "In the absence of a statute authorizing such procedure, an unincorporated society or association cannot be sued as an entity by its name, nor can a judgment be rendered against it merely by name. To confer jurisdiction, the persons composing it, or some of them, must be named as parties and process served upon them individually." In the body of the same opinion, referring to an unincorporated association, in that case a labor union, it was said: "It can neither waive errors nor enter an appearance as an entity. If the theory of a technical submission can be sustained, it would avail nothing, for there can be no judgment against a voluntary unincorporated society by name. The judgment must in all cases be against the individuals composing it, or some of them, unless a statute provides otherwise." In *West* v. *B. & O. R. R. Co.,* 103 W. Va. 417, 137 S. E. 654, it was held: "In the absence of a statute authorizing such procedure, an unincorporated society or association cannot be sued as an entity by its name, nor can judgment be rendered against it merely by name; but to confer jurisdiction, the members composing the association, or some of them, must be named as parties, and process served upon them individually." True, jurisdiction of a cause of action, growing out of some act of an association, may be obtained by serving process on some member or members thereof; but when this is done, against whom can a judgment be rendered? Both cases cited above expressly say that there can be no judgment against the association by name. This leaves only the individual members, served with process, against whom a judgment may be recovered. How can it be said that service on members of

an unincorporated association brings it into the action in any way, when the court is powerless to render any judgment against it? Why do a vain and futile thing? We construe the holdings of the two cases as doing nothing more than providing a remedy against members of an unincorporated association for any wrongdoing of such association; and, of course, only against those who are served with process in a suit or action against them growing out of such wrongdoing. These cases are based on the theory of the absence of any statute authorizing an action against unincorporated associations. At the time the case of *West* v. *B. & O. R. R. Co.*, *supra,* was decided, Code, 47-2-9, relating to suits by unincorporated associations in protection of trade-marks, and Code, 35-2-4, 5, 6, and 7, relating to educational, fraternal and charitable associations, cited by plaintiff as in some measure recognizing the existence of unincorporated associations, was statutory law, and for the most part these sections were a part of the statute when the *Simpson & Smith* case was decided. Evidently, the Court did not then construe those statutes as having the force and effect now claimed for them by counsel for plaintiff, and, therefore, we conclude that there is now no existing statute in this State under which the action at bar can be maintained against an unincorporated association of the character here sought to be involved.

We are reminded that the State is a part of the Federal Union, and it is contended that we should adopt the rule followed by the Federal Courts in respect to unincorporated associations, particularly labor unions. It is true that recent Federal statutes relating to labor relations, such as the Railway Labor Act, National Labor Relations Act, Fair Labor Standards Act, War Labor Dispute Act, and probably many others, are made to apply to associations such as we have before us in the case at bar. The Sherman Anti-Trust Act did likewise. The Federal Courts have, we think, extended the field in which unincorporated unions may sue and be sued beyond that recognized at common law. Generally, but not universally, they base their decisions in so doing on one or more of the statutes mentioned, and

possibly on other statutes of similar import. The case of *United Mine Workers of America* v. *Coronada Coal Co.,* 259 U. S. 344, 42 S. Ct. 570, 66 L. ed. 975, decided by the Supreme Court of the United States in 1922, held, in effect, that the United Mine Workers of America and its subsidiaries, district and local organizations, unincorporated labor unions, were recognized as distinct entities by acts of the Congress, and suable as such in the Federal Courts, through process served on their principal officer, for torts committed by them in strikes, and that their strike fund was subject to execution. It was there held that Section 7 of the Sherman (Anti-Trust) Act, authorizing actions for damages for conspiracies in restraint of interstate commerce "against corporations and associations * * *", included unincorporated associations such as the United Mine Workers of America. But the case went further. Chief Justice Taft in the opinion said:

"Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. * * * But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. Their right to maintain strikes, when they do not violate law or the rights of others, has been declared. The embezzlement of funds by their officers has been especially denounced as a crime. The so-called union label, which is a quasi trademark to indicate the origin of manufactured product in union labor, has been protected against pirating and deceptive use by the statutes of most of the States, and in many States authority to sue to enjoin its use has been conferred on unions. They have been given distinct and separate representation and the right to appear to represent union interests in statutory arbitrations, and before official labor boards. We insert in the margin an extended reference, furnished by the industry of counsel, to legislation

of this kind. More than this, equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one person of many, too numerous to sue or to be sued (Story Equity Pleadings, 8th ed., §§ 94, 97; * * *;) and this has had its influence upon the law side of litigation, so that, out of the very necessities of the existing conditions and the utter impossibility of doing justice otherwise, the suable character of such an organization as this has come to be recognized in some jurisdictions, and many suits for and against labor unions are reported in which no question has been raised as to the right to treat them in their closely united action and functions as artificial persons capable of suing and being sued. It would be unfortunate if an organization with as great power as this International Union has in the raising of large funds and in directing the conduct of four hundred thousand members in carrying on, in a wide territory, industrial controversies and strikes, out of which so much unlawful injury to private rights is possible, could assemble its assets to be used therein free from liability for injuries by torts committed in course of such strikes. To remand persons injured to a suit against each of the 400,000 members to recover damages and to levy on his share of the strike fund, would be to leave them remediless."

He then referred to Sections 7 and 8 of the Sherman Act as confirming the Court's conclusion on suability and recovery.

In a later case, *Brown* v. *United States,* 276 U. S. 134, 48 S. Ct. 288, 72 L. ed. 500, decided in 1928, the same Court sustained a proceeding for contempt, originating in some character of proceeding involving the application of the Sherman Anti-Trust Act, in which an unincorporated association was proceeded against. In that case the Court relied solely upon the Sherman Act, as will appear from the following excerpt from the opinion in the case prepared by Justice Sutherland:

"The general rule is that in the absence of statute an unincorporated association is not a legal entity which may be sued in the name of the

association. Many of the states have adopted statutes expressly providing that such associations may be sued. But an express provision is not indispensable. Such a suit may be maintained in virtue of a necessary implication arising from statutory provisions although the statute does not in terms so provide. Here, such an implication arises from the provisions of the Sherman Anti-Trust Act. c. 647, 26 Stat. 209. The act denounces as illegal every contract, combination and conspiracy in restraint of interstate and foreign trade, and provides that every person who shall make any such contract or engage in any such combination or conspiracy shall be guilty of a misdemeanor. · Section 8 of the act provides that the word person shall be deemed. to include corporations and *associations* existing under or authorized by the laws of the United States, of any territory, state or foreign country. That the Alliance was an association within the meaning of this section and, therefore, subject to the provisions of the act is clear. The provisions of the act creating criminal and civil liability against such an association necessarily carry the implication that it may be proceeded against by its common name to enforce the liability. Consequently, for a violation of the Anti-Trust Act, it may be prosecuted, indicted and convicted, and judgment rendered against it and satisfied by execution out of its assets. * * *. To say that an association thus may be prosecuted, indicted, convicted, fined and judgment satisfied, and that appropriate process may be issued and executed to these ends but that a subpoena *duces tecum* without an *adtestificandum* clause * * * cannot in the course of the very proceeding go against it by its common name, would be to utter an absurdity. While the subpoena *duces tecum* directed to the officer in possession of the documents would have been good, and perhaps preferable, the matter is not one of substance, but purely of procedure, and we entertain no doubt that the subpoena here directed to the association and served on such officer is valid."

In *Operatives Plasterers, etc.* v. *Case*, 68 App. D. C. 43, 93 F. 2d 56, decided by the United States Court of Appeals for the District of Columbia, in 1937, the judgment of the

State Court of North Carolina in an action against an unincorporated association, and where the process had been served on an agent of the defendant, and promptly forwarded to the secretary-treasurer of the International Association, was upheld under the full faith and credit clause of the Federal Constitution. When we go to the opinion or order of the State Court, we find that it held that the question of whether defendant could be sued as an entity was one of procedure, which should have been raised before judgment, and not being so raised was waived. However, the case supports what has come to be, we think, the Federal rule, which permits actions against unincorporated associations, where process is served on an agent or officer of the association. We have found no case where the service of process on one or more members of the association impleads the association itself. Such a proceeding would be akin to serving process on a corporation by delivering the same to a stockholder, and, of course, such service would be useless for any purpose.

The rule in the Federal Court is based largely, although not wholly, on the Federal statutes relating to subjects in which unincorporated associations such as labor unions play an important part. Plaintiff asks us to adopt that rule, notwithstanding the fact, which should be apparent to all, that in this State we do not have the character of statutes such as the Congress has enacted. In a sense, plaintiff asks us to recognize Federal laws, enacted under the power vested in the Congress to regulate interstate commerce, as controlling in matters where this State is free to pursue its own policy as respects suits and actions in its own Courts. We might feel free to do this, if we could find any tendency on the part of the legislative department of the State Government to adopt such a policy; although we would still be loathe to deal with a matter of such importance in the absence of direct legislative action. This Court, in keeping with its traditions, will zealously guard the powers entrusted to it under the Constitution of the State; but, on the other hand, it has no disposition to encroach upon powers vested by the Constitution in

other departments of the State Government. With these principles in mind, we find that not only has the Legislature failed to authorize suits or actions in any form against that character of unincorporated association known as labor unions, but has expressly excluded them from legislation affecting other types of unincorporated associations, such as that which authorizes the appointment of trustees therefor, and the trustees are made statutory corporations which may sue and be sued. Thus we are impelled to the conclusion that the Legislature has never intended to open the way for suits against labor unions as unincorporated associations. As indicated above, the Legislature has dealt with most types of unincorporated associations, but has not authorized suits against them by name. We have, however, provided for the appointment of trustees for them, and have made these trustees a statutory corporation, and in that manner authorized suits against the corporation which is binding upon the membership of an unincorporated association and reaches its assets; but from all these provisions labor unions are expressly excluded. In the face of this exclusion, should we say that labor unions can be singled out as the one type of unincorporated association which can be sued as an entity by its name? We think not. The Legislature has the power to provide how a labor union may be sued, just as it had the power to provide how other types of unincorporated associations may sue and be sued. The single instance in which the Legislature has authorized a suit or action by such associations is that relating to trade-marks. Code, 47-2-8. We do not think that the exercise of its power in that limited way, justifies this Court in holding that merely because such association may sue as to a particular matter, it becomes subject to be sued in all types of cases. On the whole, not only has the Legislature of this State failed to enact any statute, which by direct terms, or through implication, authorizes suits and actions against unincorporated associations by name, but it has, in our opinion, deliberately molded our laws so as to prevent suits or actions in any form against that class of unincor-

porated associations known as labor unions. In the face of what we think is clear legislative intent, this Court would not be justified in a holding which would be in plain violation of the fixed policy of the legislative branch of the Government. After all, the matter of dealing with the manifold relations between employer and employee, and in their labor relations, between the employees themselves, is becoming more and more one for legislative action; and in matters of this nature, we think it advisable, from every standpoint, that courts confine themselves to their natural functions, namely, that of interpreting the laws which the Legislature in its wisdom may enact.

We have held that the individual defendants can be, and have been, sued in their personal capacity. The declaration charges them with a conspiracy to wrong the plaintiff, and charges malice. The details of the allegations are, in our opinion, sufficient to acquaint the defendants with what they will be called upon to meet in the trial of the action, and the declaration, taken as a whole, alleges a cause of action which, if sustained by proof, would warrant recovery against the defendants aforesaid in their individual capacity, but not as representatives of either Local Union No. 9 or the International Union aforesaid. Therefore, the action of the trial court on the joint and several demurrers of the individual defendants is approved.

We do not think the declaration shows on its face that plaintiff had any remedy within the labor unions of which he was a member, which he failed to exhaust. We have many times held that a member of a labor union must exhaust his remedies within his organization before he can be heard in a court. *West* v. *B. & O. Ry. Co., supra; Smith* v. *Catholic Union,* 99 W. Va. 256, 128 S. E: 306; *Burger* v. *McCarthy,* 84 W. Va. 697, 100 S. E. 492; *Simpson & Smith* v. *Brotherhood of Locomotive Engineers, supra; Robinson* v. *Brotherhood of Railway Trainmen,* 80 W. Va. 567, 92 S. E. 730. Whether plaintiff had remedies within his organization of which he failed to avail himself, or whether the pursuit of such remedies, in the circumstances, would have

served him, only a trial of the action can determine. We cannot on demurrer determine this point.

Seeing no error in the rulings of the trial court on the several points certified, the same are affirmed.

*Rulings affirmed.*