James Matthew BARLOW, Appellant,

v.

Josephine ROCHE, John L. Lewis and Henry G. Schmidt, Trustees, United Mine Workers of America Welfare and Retirement Fund, and United Mine Workers of America, Appellees.

Nos. 2456, 2494.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 18, 1960.

Decided May 17, 1960.

---

Steven A. Winkelman, Washington, D. C., with whom Thomas S. Jackson, Robert M. Gray, and John W. Jackson, Washington, D. C., were on the brief, for appellant. Darryl L. Wyland, Washington, D. C., also entered an appearance for appellant.

Edward L. Carey, Washington, D. C., with whom Val J. Mitch and Charles L. Widman, Washington, D. C., were on the brief, for appellees Josephine Roche, John L. Lewis and Henry G. Schmidt, Trustees, United Mine Workers of America Welfare and Retirement Fund.

Willard P. Owens, Washington, D. C., with whom Welly K. Hopkins and Harrison Combs, Washington, D. C., were on the brief, for appellee United Mine Workers of America.

Before ROVER, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, retired) sitting by designation under Code, § 11–776(b).

QUINN, Associate Judge.

Plaintiff-appellant filed suits against appellees claiming $1,621.36. The action against the United Mine Workers of America, hereafter referred to as the Union, was dismissed on the pleadings. After trial against the United Mine Workers of America Welfare and Retirement Fund and its trustees, hereafter referred to as the Trust, the court found for appellee Trust. The separate appeals were consolidated for hearing.

Appellant was a resident of West Virginia. In its answer the Union admitted that on March 19, 1957, appellant was employed in the coal industry [as a loader]'

and was a member in good standing of Local Union No. 8784, located at Beeson, West Virginia. On March 19, 1957, appellant entered St. Luke's Hospital, Bluefield, West Virginia, and remained there until May 13, 1957. The expense he incurred for care and treatment at the hospital was the same amount for which he demanded judgment against the Union or the Trust. In brief, appellant alleged that he was entitled to judgment for the following reasons: (1) The Union, through its duly authorized agents, was negligent in not providing him, as a member in good standing, with a certain medical form or hospital card designated as "Form 85–HS," and (2) The Trust wrongfully refused to reimburse him for the medical expenses he incurred at St. Luke's Hospital.

The Trust requires, as a condition precedent to payment of medical and hospital benefits, that application be filed and a Form 85–HS be issued to the Union member. This form may be obtained from the Trust by a Union member upon prescribed application. The application blanks are distributed by the local union, which, in turn, certifies to the Trust, through the district office, that the applicant is in good standing. Apparently, if appellant had in fact held Form 85–HS on March 19, 1957, he would have been fully reimbursed. Thus, the central point of his claim before this court is that he should have been permitted to show that the Union was negligent in failing, through its local union, to provide him with this form, or the means of obtaining it, and that the Trust and the trial court placed an unreasonable significance on the possession of a Form 85–HS by wrongfully refusing to reimburse a member not holding it, but otherwise eligible for benefits.

I

Appellant's claim against the Union is one, as stated before, for negligence. He says that the Union's tortious conduct directly caused his loss. Conceding well-pleaded facts, appellant's complaint states

a cause of action. However, the trial court dismissed the suit because it felt "that plaintiff [appellant] as a member of Defendant Union may not maintain the instant action against the Union and hence his co-principals for the alleged acts of their common agent or agents." Therefore, in this appeal we are squarely faced with the problem of a union member in good standing suing his union for an alleged negligent tort committed upon him. The question is, can he do this?

■ Perhaps a few general comments will be of assistance. It appears that federal labor legislation does not prevent, by preemption, a state court from entertaining suits against unions for some types of tortious conduct. A union member may sue his union in state court for breach of contract and recover resulting damages;[1] an employee, not a union member, may sue a union in state court for wrongfully interfering with his employment;[2] and a union may be amenable to suit in state court for tortious conduct even when that conduct is an unfair labor practice[3] under the Labor Management Relations Act of 1947.[4] The question in this case is not what federal policy, as enforced by the National Labor Relations Board, prevents, but rather what state law permits and allows.

To summarize, the Union argues that appellant, being a member, is a coprincipal and cannot sue another principal for the act of their common agent. The general

proposition that a principal may sue his agent for dereliction of duty, but not a co-principal for dereliction of duty by their common or mutual agent, hardly needs reference to supporting authority. Moreover, at common law a labor union could not be sued, nor bring suit, as an entity.[5] Appellant recognizes that argument but asks, very simply, that because of practical necessity we make an exception to it. As the Supreme Court of Texas recently said:

> " * * * The wrongful act will not be imputed to an injured [union] member if committed in the course of an undertaking that is strictly adverse to [his] interests. * * * "[6]

If we were free to adopt either position, it would not be too difficult to agree with one of the two holdings for which the parties contend. However, both arguments go wide of the mark.

■ The controlling law in this appeal is not the law of the District of Columbia. The alleged tort about which the parties litigate occurred in West Virginia, the effect of the alleged tortious acts was there, and the law of that state governs the disposition of this appeal.[7]

■ It is apparent that the State of West Virginia would not allow this action and accordingly, appellant cannot prevail here. That state would not so much as permit appellant to sue this appellee in its common name;[8] thus the common law

---

1. International Ass'n of Machinists v. Gonzales, 1958, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018.

2. International Union, Etc. v. Russell, 1958, 356 U.S. 634, 78 S.Ct. 932, 2 L. Ed.2d 1030.

3. United Const. Workers, etc. v. Laburnum Const. Corp., 1954, 347 U.S. 656, 74 S. Ct. 833, 98 L.Ed. 1025. Cf. San Diego Building Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775.

4. 61 Stat. 136 (1947), 29 U.S.C.A. § 141.

5. See 2 Williston, Contracts § 309A (Jaeger ed. 1959).

6. United Ass'n of Journeymen, etc. v. Borden, Tex.1959, 328 S.W.2d 739, 742.

7. See Miller v. Pennsylvania Railroad Company, 1957, 102 U.S.App.D.C. 135, 251 F.2d 376; Sears, Roebuck & Co. v. Donovan, D.C.Mun.App.1958, 137 A.2d 716, 718; Lehman v. Great Atlantic & Pacific Tea Company, D.C.Mun.App.1957, 136 A.2d 397.

8. See West Virginia Secondary School Act. Comm. v. Wagner, W.Va.1958, 102 S.E. 2d 901; Milam v. Settle, 1944, 127 W.Va. 271, 32 S.E.2d 269; West v. Baltimore & O. R. Co., 1927, 103 W.Va. 417, 137 S.E. 654; Simpson v. Grand International B. of L. Engineers, 83 W.Va. 355, 98

rule prohibiting suits against unincorporated associations as separate legal entities governs there today. The precise question with which we are faced is, granting, for procedural purposes, valid jurisdiction over unincorporated associations, would West Virginia allow a member of the Union a substantive right to sue the *Union* for alleged negligence committed by other members of the Union? We think not.

Although we have found no case from that state upon this exact point, the opinion from its Supreme Court of Appeals in Milam v. Settle [9] contains language which we feel disposes of the issue. In that case, one sounding in tort against individual members of a union, the court discusses the procedural questions concerning suits in West Virginia against labor unions in their common name. It refused to follow the federal rule which permits suits against unions as a distinct entity,[10] saying that there was no tendency on the part of the state legislature to adopt a similar policy. But the court did not stop there. It also said:

> "* * * we find that not only has the Legislature failed to authorize suits or actions in *any* form against that character of unincorporated association known as labor unions, but has expressly excluded them from legislation affecting other types of unincorporated associations, * * *." [Emphasis supplied.] [11]

Furthermore, the court said:

> "* * * On the whole, not only has the Legislature of this State failed to enact any statute, which by direct terms, or through implication, author-

izes suits and actions against unincorporated associations by name, *but it has, in our opinion, deliberately molded our laws so as to prevent suits or actions in any form against that class of unincorporated associations known as labor unions.* * * * After all, the matter of dealing with the manifold relations between employer and employee, and in their labor relations, *between the employees themselves,* is becoming more and more one for legislative action; and in matters of this nature, we think it advisable, *from every standpoint,* that courts confine themselves to their natural functions, namely, that of interpreting the laws which the Legislature in its wisdom may enact." [Emphasis supplied.] [12]

We feel that West Virginia would not entertain this action, and, at most, would say that appellant, as coprincipal, was suing himself. Therefore, the dismissal upon that ground was correct.

## II

The National Bituminous Coal Wage Agreement of 1950 was executed by the signatory coal operators and the United Mine Workers of America. The Trust, within the provisions of Section 302(c) (5) of the Labor Management Relations Act, 1947,[13] was created by that Agreement. Accordingly, the Union and the coal operators are the settlors of the Trust.

The stated purpose [14] of the Trust, among other things, is to make payments of benefits for medical and hospital care from principal or income, or both, to the employees (families and dependents) of the coal operators.

---

S.E. 580, certiorari denied 1919, 250 U.S. 644, 39 S.Ct. 494, 63 L.Ed. 1186.

9. 1944, 127 W.Va. 271, 32 S.E.2d 269.

10. See United Mine Workers of America v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762.

11. Supra, note 9, 32 S.E.2d at page 275.

12. Id.

13. 61 Stat. 157, 29 U.S.C.A. § 186(c) (5).

14. This, of course, is in harmony with and made necessary by the requirements of the statute, supra note 13.

The trustees were granted full authority "within the terms and provisions of the 'Labor Management Relations Act, 1947' and other applicable law" with respect to certain questions, among which were "coverage and eligibility" and "methods of providing or arranging for provisions for benefits * * *." [15]

It is at once apparent from the trust instrument that the settlors intended to grant very broad and encompassing powers for the administration of the Trust to the trustees. They are given full authority to act subject only to the purposes of the Trust and applicable law. However, the powers the trustees exercise are not necessarily confined within the ambit of written words but may also depend upon, and be ascertained from, the nature and complexity of the purpose for which the Trust exists.

■ This is not to say that action taken by the trustees is immune from judicial observation. It means that courts will be and should be very hesitant to substitute their judgment for that of the trustees when the latter act, within the realm of discretion, by invoking the power which has been granted and which they are obligated to exercise. Accordingly, courts will, when a trustee is attacked, call for evidence of conduct which is tainted by fraud, or is malicious in its nature, or is perpetrated in bad faith, or which is so arbitrary and cavalier in its manner that it is an abuse of the authority purportedly exercised.[16]

Appellant's complaint against the Trust stated an action at law for monies due and owing. He said that as a member in good standing of the Union, he was entitled to benefits from the Trust. Furthermore, he stated that he was entitled to these benefits because of the contractual obligations of the trustees and he, accordingly, prayed for a judgment. The Trust denied the allegations and demanded proof. Appellant did not ask for equitable relief. Nevertheless, the case was tried as a suit in equity.

The first question presented is whether the court erred in granting the Trust's motion to strike appellant's demand for a jury trial.

■■ Appellant argues that the nature of the right he asserts is contractual; that he is a third-party beneficiary of the Coal Wage Agreement; that the trustees are under contractual obligation, and that the right asserted against them is one at law sounding in contract. There is authority for this position,[17] but we do not agree. First, it may well be that appellant is a third-party beneficiary of the Coal Wage Agreement, but we are not aware that the trustees of this Trust contracted, in the Agreement of 1950, as trustees for the benefit of the Trust's beneficiaries. The Trust is the outgrowth of that Agreement and the trustees do not appear as signatory parties having affixed their names in the capacity of trustees. Granted, appellees are in close proximity with each other and that their officials are often the same. But close proximity would not obliterate the distinction between a union and an active trust. Secondly, even though the words of creation are found in a labor agreement, to which appellant may be a third-party beneficiary, they remain as the words of the Trust's creation and appellant is, so far as the Trust is concerned, one for whom its benefits were intended. Accordingly, we feel that the nature of his position is one in equity rather than at law.

■ Appellant next suggests that even if he holds an equitable position in relation to the Trust, his recovery, in this suit, is at law. Certainly, the mere fact that a

15. A paragraph within that section of the Coal Wage Agreement which creates this Trust also provides, in substance, that title to all money is vested in the trustees.

16. Kloman v. Doctors Hospital, D.C.Mun. App.1950, 76 A.2d 782. See generally 2 Scott, Trusts, § 187 (2d ed. 1956).

17. See Hobbs v. Lewis, D.C.D.C.1958, 159 F.Supp. 282, 286.

suit is against a trust does not preclude a jury trial. Moreover, if the prayer is for damages, then usually there is a right to a jury trial.[18] However, in suing a trustee at law, the right of the beneficiary should be predicated upon the trustee's immediate and unconditional duty to pay the beneficiary.[19] Such is not the case here. We will, therefore, look beyond the pleadings to the basic nature of the suit and to the central point of contention. That concerns not a dispute as to whether money is due and owing, or the amount, but rather the reasonableness of the trustees in refusing payment. Thus, although appellant declares in law, he seeks, basically, equity, and the motion was correctly granted.

■ Finally, appellant maintains that the trial court erred in finding that the trustees acted reasonably. According to appellant, the requirement that application for a Form 85–HS be made prior to incurring the expense, or the expense will not be compensated for, is not reasonable. The difficulty with this proposition is that the evidence does not support it, and we know of no reason why the trial court's finding should be upset. Here we have a fund, involving millions of dollars, in which thousands of miners and their dependents participate. Therefore, certain rules and regulations must, of necessity, be promulgated and the trustees must be granted certain discretionary powers to administer that fund efficiently. Considering these factors, we cannot hold as a matter of law that the regulation involved in this case was unreasonable.

The dismissal of the suit against the Union and the finding for the Trust are

Affirmed.

18. See 5 Moore, Federal Practice, § 38.17 (1951).

19. See 2 Scott, Trusts, §§ 198, 198.1 (1956).