## ANNIE L. WHITBY, ET AL., vs. THE BALTIMORE, CHESAPEAKE AND ATLANTIC RY. CO.

*Duty of Railway Company to Maintain Safe Approaches to Crossings— Injury Caused by Failure to Protect Embankment by Railing—Instructions to the Jury.*

When a railway company, in constructing its road across a public highway, changes the grade of the highway, it is bound to make and keep the approaches to the crossing, although beyond the company's right of way, in a safe condition, as·well as the crossing itself.

If in such case a railing or other barrier along an embankment leading to the railroad crossing is necessary, in the opinion of the jury, for the safety of the public, the railway company is liable for injuries suffered, by a person who was using due care, in consequence of its failure to provide such railing.

In constructing the approaches to a highway crossing, the railway company is not required to correct defects in the highway that previously existed.

A·woman who was driving across defendant's railway tracks approached by an embankment was injured in consequence of her horse backing the carriage down the embankment into a hole at the end of the defendant's drain pipe. She and her husband brought two actions to recover damages. At the trial of the suits, the defendant asked that the jury be instructed that if the wife was driving an unsafe and foolish horse, which the plaintiffs or either of them knew to be such, that circumstance was to be considered by the jury, &c. *Held*, that this prayer was properly rejected because knowledge by the plaintiff's husband, who was not with her at the time of the accident, of the character of the horse, does not affect her with such knowledge.

The correctness of an instruction to the jury is to be determined exclusively by a consideration of the evidence in the case, unless special reference is made therein to the pleadings.

Appeal from the Circuit Court for Talbot County (MARTIN and BROWN, JJ.)

*Plaintiffs' 2nd Prayer.*—If the jury find from the evidence that the road known as Harrison street extended was an existing public road or highway at the time of the construction of the railroad of the defendant at that point and that said road

continued to be a public road or highway up to the time of the
accident complained of, and if they further find that the said
highway was severed by the construction of an earthen em-
bankment across the same upon which was placed the track
of the defendant, that then it was the duty of the defendant to
reunite said highway by the construction of good and suffi-
cient approaches to said crossing along said highway, and to
maintain the same in such good repair as to afford free, safe
easy passage over the same ; and if the jury should further
find that in the construction of the south approach to said
crossing a deep and dangerous embankment or excavation was
left in or immediately adjoining said highway, that then it was
the duty of said defendant company to construct and maintain
a good and sufficient barricade, or guard-rail along such em-
bankment ; and if the jury believe from the evidence that the
defendant failed in the performance of the aforesaid duties, and
the plaintiff, Annie L. Whitby, in consequence thereof, while
travelling on said highway, and using reasonable care, was in-
jured, then the plaintiffs are entitled to recover in this action.
(*Refused.*)

  *Plaintiffs' 6th Prayer.*—That if the jury find from the evidence
that sometime prior to the year 1889, the road now known
as Harrison street extended, leading from the town of Easton,
in Talbot County, Maryland, to the fair grounds near said
town, was a public road or highway ; and if they further find
that thereafter sometime about the year 1889, the Baltimore
and Eastern Shore Railroad Company constructed a line of
railroad over and across said road known as Harrison street
extended having first obtained the permission of the County
Commissioners of Talbot County so to do ; and if they fur-
ther find that thereafter, about the year 1894, the defendant
railway company became the owner of all the property, rights,
privileges, franchises and immunities of the said Baltimore and
Eastern Shore Railroad Company within the said Talbot County,
and that the said defendant company continued to own and oper-
ate said railroad up to the time of the accident complained of in
this case, that then it was the duty of the defendant company to

maintain all that part of said road known as Harrison street extended, which lies within the right of way of the railroad of the defendant, and the necessary approaches thereto, free from all unnecessary obstructions, and to keep the same in repair and safe for the passage of the public along said road and across said right of way, and to erect and maintain all such barricades as would be necessary to protect the travelling public from any dangerous embankment or excavation that was in or upon said road, or immediately adjoining thereto within the right of way of the defendant or along the necessary approaches thereto if they should find there was any such dangerous embankment or excavation; and if the jury believe that the defendant failed in the performance of the aforesaid duties, and the plaintiff, Annie L. Whitby, in consequence thereof, while travelling on said road within said right of way, and using reasonable care was injured then the plaintiffs are entitled to recover in this action. (*Refused.*)

*Defendant's 4th Prayer.*—That if the jury find that plaintiff, Annie L. Whitby, was at the time of the injury complained of, riding in a buggy drawn by an unsafe and foolish horse which the plaintiffs or either of them knew or by the exercise of reasonable diligence could have known to be unsafe and foolish, and shall further find that while riding with said horse and while near the alleged dangerous place, the plaintiff, Annie L. Whitby, called to her husband who was approaching said road on the railroad, if the jury shall so find and shall further find that Annie L. Whitby's dog which was with her husband ran towards said horse jumping and barking, and that said horse began to back and that said Annie L. Whitby snatched the reins from her companion and pulled on said horse while her companion whipped him, that these are circumstances together with all the other facts in the case to be considered by the jury upon the question of the due care required to be exercised by the said plaintiffs in avoiding the injury complained of. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Guion Miller*, for the appellant.

*Wm. H. Adkins*, for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellants sued the appellee to recover damages for injuries sustained by Mrs. Whitby by reason of the alleged dangerous and unsafe condition of a highway known as Harrison street extended, which is crossed by the defendant's railroad near Easton, in this State. The Baltimore and Eastern Shore Railroad Company built the railroad and, after obtaining permission from the County Commissioners of Talbot County, constructed an embankment eight or ten feet high, across Harrison street extended, upon which it placed its track. The approaches to the crossing were made by that company by filling in and building up the street for a distance of sixty or seventy feet on each side of the track, although the plans submitted to the County Commissioners provided for its being filled sixty or seventy yards. The plaintiff's testimony tended to show that the grade of the street for the distance of twenty feet south of the railroad track was at the time of the accident a fifteen per cent grade, and it was conceded at the trial that the defendant company had succeeded to all the rights, privileges and immunities of the Baltimore and Eastern Shore Railroad Company, and is operating its railroad. Mrs. Whitby and a friend were driving on this street and as the horse got his front feet between the rails of the track, he began backing, the wheels turned on the lock and the carriage was backed down an embankment, at a point about twenty feet from the track, into a hole which was at the end of a drain pipe, placed there by the railroad company in constructing the approach to the crossing. The carriage and horse fell on Mrs. Whitby and she was seriously injured. The questions for our consideration are presented by the first bill of exceptions, which relates to the exclusion of some photographs offered by the plaintiffs in rebuttal, and by the second, sixth, seventh, eighth, ninth and tenth prayers offered by the

704    WHITBY vs. BALTO., C. & A. RY. CO.

Opinion of the Court.    [96

plaintiffs, and rejected by the Court, and the fourth and seventh prayers offered by the defendant, which were granted. The verdict being for the defendant the plaintiffs appealed from the judgment rendered thereon.

The principal and most important question involved in this case can be discussed in connection with defendant's seventh prayer, which, after leaving to the jury to find that Harrison street extended was an existing road at the time of the construction of the railroad, and continued to be a public road up to the time of the accident, instructed them that "it was *only* the duty of the defendant to keep that portion of said road crossing its track, lying within its right of way, in such repair and condition as to afford free, safe and convenient passage to persons travelling over same with horses and carriages, and exercising reasonable care." The right of way of the defendants extends thirty feet south of the south rail of the track on both sides of the street, but where the railroad crosses the street there was "a level or flat surface, including space covered by the track, of about nine feet." It is contended by the appellee that its right of way over the street was limited to that width and hence the object of this prayer was to make its liability dependent upon the failure to keep that portion of the road, or street as we have called it, in repair. Is it to be so restricted? It was argued that as the declaration alleges that the place complained of was "within the limits of said right of way" the plaintiffs were confined to that and could not recover for any injures sustained by reason of the condition af the approaches outside of the right of way, but neither this prayer nor those of the appellants refer to the pleadings. The law on that subject is thus concisely stated in 2nd *Poe*, section 302: "Unless special reference is made in the pleadings, prayers will be held to relate exclusively to the evidence, and their correctness will be determined entirely by a consideration of the evidence. Wherever, therefore, it is proposed to make a point or raise a question upon the pleadings, or upon the testimony as applicable to the pleadings, it is essential to call special attention to them. This is a well-settled

doctrine in our practice." In the note to that section many cases are cited, and the reason of the rule is that under the statute this Court cannot decide any point or question which does not plainly appear by the record to have been raised and decided by the Court below. If a party to a suit wants to raise such a question by a prayer he must refer to the pleadings and thus call upon the Court to examine them and, if necessary, the opposite party then has the opportunity to amend. This case well illustrates the justice of such rule as the appellants evidently intended by their allegation—"within the limits of said right of way"—to embrace the portion of the street that would be included by extending the southern lines of the right of way across the street, as the precipice and hole mentioned in the declaration and in the testimony are north of those lines extended. We need not therefore determine whether or not "the right of way" of the appellee is limited to the nine feet, but as that was evidently the intention of the prayer and was doubtless so understood by the jury, we must determine whether it is proper to so limit the liability of the defendant, conceding the right of way over the street to be confined to the nine feet.

Although it may not be necessary for us to refer to authorities outside of those in this State, the article on "Crossings" in 8 Ency. of Law (2 ed.) has collected so many cases on that subject and so succinctly states the law, that it will not be amiss to refer to some portions of it. On page 363 of that volume it is said "It is the duty of every railroad company properly to construct *and maintain* crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travellers, so far as it can do so without interfering with the safe operation of the road." Again on page 366 "An embankment constructed as a necessary approach to a railroad track is in legal contemplation a part of the crossing, and should comply with the provisions regulating crossings in general," and on page 369 it is said "As a general rule the duty of keeping a public crossing in repair is the same as the duty of construction, it being the

duty of the railroad company to keep its track *and approaches thereto* in a condition fit to meet the demands of public travel." And as reflecting upon the liability of the appellee, as the successor of the road which constructed this crossing, on page 370, it is said "The obligation to keep up the crossing, imposed as a condition of the right to cross, necessarily attaches to whatever person or corporation may become the owner of the road, so long as the right is exercised. It is a continuing condition or obligation, inseparable from the enjoyment of the franchise." In some of the cases cited in the notes on the pages we have referred to statutes were being construed, but the general principles announced in the text are correct, independent of statutes. When a railroad company has the privilege of building its road over a public highway and in the course of its construction finds it necessary or desirable to change the grade of the highway, there can be no valid reason for not requiring it to keep the approaches in a safe and proper condition, as well as the crossing itself. "At common law it is undoubtedly the rule that where a new way or road is made across another which is already in existence and use, the crossing must not only be made with as little injury as possible to the old road or way, but whatever structures are necessary for such crossings must be erected and maintained at the expense of the party under whose authority and direction they are made." *Northern Cent. Ry. Co.* v. *Baltimore*, 46 Md. 445. See also *Baltimore* v. *Cowen*, 88 Md. 447; *Cent. Pass. R. R. Co.* v. *P. W. & B. R. Co.*, 95 Md. 428; *Eyler* v. *County Commissioners*, 49 Md. 269. In the last case it was held that both the Canal Company and the county were liable for not keeping the bridge in repair that caused the injuries to Eyler, and subsequently the county recovered the amount of the judgment against it from the Canal Company. *C. & O. Canal Co.* v. *County Commissioners*, 57 Md. 201. That county commissioners may be held liable for not having a railing or barrier of some sort along an embankment or precipice on a public road, if that be necessary in the opinion of the jury to make it safe, is shown by the case of *County Commissioners* v.

*Broadwaters*, 69 Md. 533.   And a railroad company was held responsible when there was no railing or other protection along the approach to its bridge, on which travel was permitted in carriages and on foot by persons paying toll.  *B. & O. R. R. Co.* v. *Boteler*, 38 Md. 568.   It is held to be the duty of turnpike companies to protect travellers by guards or railings of some kind along embankments which are steep and dangerous.   *B. & Y. Turnpike Road* v. *Crowther*, 63 Md. 558; *B. & R. Turnpike Road* v. *State, use of Grimes*, 71 Md. 573; *Turnpike Co.* v. *Hebb*, 88 Md. 132.   In this latter class of cases this Court has held that when there are differences in the grades on a turnpike "the company is bound to make safe and convenient turnouts to the side roads, and where they are so great and the slopes to the side roads so precipitous, as to be necessarily dangerous, such places should be protected by proper safeguards."   *Crowther's case, supra.*

How far then are these principles applicable to this case ?

As we have seen, the railroad company for its own benefit changed the grade of this street for a distance of sixty or seventy feet and for twenty feet south of its track made a fifteen per cent grade. At or about the place where the accident occurred, which was twenty feet from the south rail, the company laid a drain pipe under the approach which emptied into a hole two or three feet deep, which was partly within the limits of the right of way of the defendant west of Harrison street extended, and partly within the limits of said street.   The entire width of the street, as originally laid out, was sixty feet—it being intended to have sidewalks on each side, of seven feet.   Opposite the place where the accident occurred, the street was made comparatively level to a point fourteen feet from the western limits and from there it sloped to the hole spoken of—it being eight and five-tenths feet deep at the western limits of the street. There is some controversy as to what caused the horse to back and the defendant had a number of witnesses tending to prove that the street where the accident occurred was not dangerous to travellers using reasonable care, notwithstanding the embankment, approaches and hole, and offeed other rev-

dence tending to show that the grade was not a difficult one. "But whether it was unsafe and dangerous was a question for the jury to be determined upon consideration of all the evidence," *Grimes' case, supra,* and, as was there said, "Horses ordinarily safe and well broken will sometimes shy and start at strange or unusual objects along the road, and travellers ought not to be exposed to peril by dangerous embankments on the side of the road and which, by proper guards, could be made ordinarily safe." It sometimes happens that horses which are usually quiet and reliable will back down a hill by reason of some unknown trouble about the harness, or because something frightens them, or for some cause that cannot be anticipated. It is possible that the jumping and barking of the dog of Mrs. Whitby may have caused this horse to back, but whatever the cause may have been, the fact is that it did back and fell over this embankment, which had been made by the railroad company as an approach to the crossing. Under the authorities cited above, it is clear that it was the duty of the defendant not only to keep the portion of the street occupied by its track in a safe condition, but the approaches to it. The seveuth prayer of the defendant therefore ought not to have limited the duty of the defendant to keeping the portion of the road crossing its track, lying within its right of way, in repair, and there was error in granting it with that limitation.

The second and sixth prayers of the plaintiff were intended to have the jury instructed as to the duty of the defendant in reference to the approaches to the crossing. The expression used in the second as to the highway being "severed" by the construction of the embankment is not altogether appropriate, although it would probably have placed an uneecessary burden on the plaintiffs. That expression is apparently taken from *Eyler's case,* but there the highway was "severed" by the canal. The latter part of that prayer ought to have submitted more clearly to the jury the question whether the construction of the approaches to the crossing was done in such way as to make it dangerous to parties using due care in travelling on the highway, and also let the jury determine whether the

conditions were such as to require a railing or other protection against danger on account of the elevation of the highway. No reference is made to the former condition of the street and if the construction of the approach to the crossing did not make the street more dangerous than it was before the railroad was built, the defendant should not be required to correct defects that existed prior to the time its road was built. What we have last said also applies to the sixth prayer. These prayers ought to have submitted to the jury to find from the evidence whether the approach to the crossing was so constructed as to make it dangerous to those using the highway, while exercising due and reasonable care, unless protected by a railing or some sufficient guard, and they could have been further instructed that, if they so found, then it was the duty of the defendant to maintain such railing or other sufficient safeguard, and that if they further found that Mrs. Whitby sustained the injury complained of by reason of the failure of the defendant to perform that duty, then the plaintiffs were entitled to recover, provided, of course, Mrs. Whitby had exercised due care and the jury found such other facts as were proper to be incorporated in the prayers.   In cases of this character it must ordinarily be left to the jury to determine what the condition of the road or street was.   Each case generally depends upon its own facts as to the necessity of having railing, or other safeguard to protect the travelling public, but if the jury find that a road or street is dangerous without it and the duty rests on the defendant to keep it in safe condition, then the Court should instruct the jury as to such duty, leaving it to determine whether the facts were such as to require a railing or other protection.   These prayers were properly rejected.

The seventh prayer of the plaintiffs was properly rejected because there was no evidence of an unnecessary obstruction or defect in the road which caused the accident.   It was said by counsel that it referred to the grade of the road, but without deeming it necessary to determine whether that of itself would make the defendant responsible, the horse was on the

710      WHITBY vs. BALTO., C. & A. RY. CO.

Opinion of the Court.                    [96

level part of the road when he commenced backing, and such a prayer would be misleading.

The eighth, ninth and tenth prayers are manifestly too broad, without referring to other objections to them. There was no occasion for so many prayers in this case, and we do not feel called upon to discuss each one at length.

The fourth prayer of the defendant is of a character that is well calculated to mislead the jury and to cause them to attach more importance to items of evidence referred to in it than some of them justify. But independent of that, it embraces at least one statement that was clearly erroneous. It says that if the jury find that the plaintiff, Annie L. Whitby, was at the time of the injury complained of riding in a buggy drawn by an unsafe and foolish horse which the plaintiffs, *or either of them*, knew or by the exercise of reasonable diligence could have known to be unsafe and foolish, etc. There were two suits tried together—one brought by Mr. and Mrs. Whitby for injuries sustained by her, and the other by Mr. Whitby for the loss of services of his wife and for money expended by him by reason of her injuries. He was not driving with her and, so far as the record discloses, did not know that she was going to use the horse, but if he knew that the horse was unsafe and foolish and she did not, why should Mrs. Whitby be held responsible for her husband's knowledge on that subject ? So without further discussion of that prayer, we think it ought to have been rejected. The evidence offered and excluded which is referred to in the first bill of exceptions does not become material in view of the fact that judgment must be reversed for reasons we have given. It is proper to add, however, that the record does not disclose any reversible error in that ruling. The case involved the condition of the embankment and hole when the accident happened, and as to the plaintiff's presumably offered evidence on that snbject in chief, they cannot complain of the refusal of the Court to allow them to offer other evidence on that subject in rebuttal. For the reasons we have given, the judgment must be reversed.          *Judgment reversed, and a new trial awarded, the appellee to pay the costs.*