**CONTINO et al. v. BALTIMORE & ANN-
APOLIS R. CO.**

No. 5977.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 9, 1949.

Decided Dec. 23, 1949.

J. Richard Wilkins, Baltimore, Md., for appellants.

Frank L. Fuller, III, and George Cochran Doub, Baltimore, Md., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

An automobile truck and trailer 12′ in height came into collision with an overhead bridge of the Railroad Company which spanned a public highway near Glen Burnie, Maryland, with a clearance of 10′ 10″, and substantial damage to the vehicle and its contents was done. The driver of the truck, a citizen of New Jersey, was not familiar with the location of the bridge and the accident occurred at night when the height of the bridge was not discernible, although the headlights of the truck were burning. The words "Clearance 10 feet 6 Inches" had been painted on the bridge 12 feet above the road by the State Roads Commission, but they were not illuminated so as to be visible at night, and there were no warning signs on the side of the road approaching the crossing.

Suit was brought by the owners of the automobile to their own use and to the use of their insurance carrier against the Railroad Company, a Maryland corporation, and liability on its part was claimed on the ground that it maintained and used the bridge in a negligent manner, without lighting or adequate warning to the traveling public. The Railroad Company moved to bring in the State Roads Commission of Maryland as third party defendant, and filed a complaint alleging that the bridge was constructed by the Commission to obviate a dangerous grade crossing over the railroad tracks, in pursuance of authority conferred upon the Commission by statute. It was alleged that responsibility for the maintenance of the bridge and a warning to the users of the highway rested with the Commission. This complaint, however, was subsequently dismissed by the Railroad Company when it was shown that the Commission was an instrumentality of the state and therefore not subject to suit.

The action against the Railroad Company was dismissed by the District Judge, 86 F.Supp. 634, who was of the opinion that the building of the bridge and underpass was the act of the State Roads Commission alone under exclusive authority given it by the statute and that the Railroad Company was under no statutory or common law duty to make the crossing safe for users of the highway.

The facts with respect to the installation and maintenance of the structure may be summarized as follows: In 1929 the Roads Commission had under construction a new highway which the County Commissioners of Anne Arundel County desired to locate so that it would cross the railroad at the point where the bridge was subsequently placed and the railroad tracks had been situated for forty-five years. The

Railroad Company objected to a grade crossing because of the extreme danger involved, but was unwilling to assume the expense of an undergrade crossing in view of its poor financial condition and its opinion that the new road was unimportant. In order to reconcile these two points of view the Commission agreed to construct the undergrade crossing and the Railroad Company agreed to contribute $3,500 towards the total cost of approximately $12,000, upon condition that the Commission would pay the balance.

The Commission prepared the plans and specifications for the bridge and underpass and also for a temporary trestle to carry the trains while the work was in progress. The plans were submitted to and approved by the Engineer of Maintenance of Way of the Railroad Company who testified that his approval related to the sufficiency of the bridge to carry the trains. The clearance was limited to 10' 10" because otherwise a stream which crossed the highway would flood it during a rainy season if built at a lower level. Normally the clearance of bridges of the type in question is 14', and this was the accepted clearance in highway and railroad construction in Maryland in 1929, although the clearance in some instances was less. The average trailer on the road at the time of the accident was from 11' 10" to 12' in height, and many of them were in operation.

The structure has been maintained since its erection by the State Roads Commission and by the Railroad Company that is, the substructure has been painted by the Commission and the ties and rails on the bridge have been kept in repair by the Railroad Company.

There can be no doubt that the damage suffered by the plaintiff was caused by negligence in the erection and maintenance of the bridge. A clearance of 14' has been required in Maryland since 1904 whenever a railroad company, considering that a highway crossing its tracks is dangerous, exercises the right conferred by the statute to provide at its own cost to carry the highway across the tracks either by overhead bridge or by a tunnel. Maryland Code 1939, art. 23, § 252. That statute and the accepted clearance of 14' in 1929 were enough to indicate the danger of a lower clearance to any one who undertook the erection of a highway bridge, even in the absence of a specific statutory requirement; and it follows that the maintenance of the bridge in this case without warning of the danger visible to travelers by day and by night was negligence of the clearest kind.

The Railroad Company does not deny that there was neglect in this respect but seeks to absolve itself from liability by placing the entire blame upon the State Roads Commission. This contention rests upon the power and authority over the road system of the state conferred by statute upon the Commission and also upon the affirmative action of the Commission in designing and erecting the structure.

The railroad line had been long in operation at the point where the Roads Commission proposed to construct a highway across it. In such a situation the rule of common law recognized in Maryland and elsewhere is not only that the crossing must be made with as little injury as possible to the old way but whatever structure is necessary for the crossing must be erected and maintained by the party under whose authority and direction it is made. Northern Central R. Co. v. Baltimore, 46 Md. 425; Eyler v. Allegheny County Commissioners, 49 Md. 257, 33 Am.Rep. 249; Central Pass. Ry. Co. v. Philadelphia W. & B. R. Co., 95 Md. 428, 52 A. 752; Washington B. & A. Electric R. Co. v. Cross, 142 Md. 500, 121 A. 374.

The responsibility for the crossing therefore rested primarily upon the Commission. Furthermore, the power and authority of the Commission to take action in the matter is not open to doubt. It was created in 1908 and by statutes then and subsequently passed it was granted plenary power to select, construct, improve and maintain a system of improved highways for the state within the limits of the funds provided therefor. It was given authority to purchase or condemn property and to enter into contracts to effectuate the purposes for which it was created. As a necessary incident of its authority the Com-

mission was given the power of selecting those roads and routes which in their judgment would best serve the public interest. Murphy v. State Roads Comm., 159 Md. 7, 14, 149 A. 566; Maryland Code, art. 89B, § 4.

The Commission was also given the duty to maintain the roads and bridges of the state so far as funds were available; and it was directed to erect and maintain along the rights of way the necessary signs, signals or markers to direct the traveling public and warn them of danger; and all other persons were forbidden to display any such sign within 300 feet of a highway on pain of fine or imprisonment. Maryland Code art. 89B, §§ 44, 45, 85.

■ The liability of the Commission, if it were not immune as an agency of the state, would be clear and indisputable; but it does not follow that the Railroad Company, which participated in the construction of the crossing, is free from responsibility. Where a public highway is led across the tracks of a railroad company by means of a bridge or underpass, it is held in Maryland and elsewhere that both the highway authorities and the railroad company may be held liable for damage caused by neglect in construction or maintenance, if both parties owe a duty to the traveling public, even though only one did the work and paid the expense thereof. The liability of either party depends upon the existence of a duty on its part to protect users of the crossing from injury. Walters v. Baltimore & O. R. Co., 120 Md. 644, 8 A. 47, 46 L.R.A.,N.S., 1128; Hill Construction Co. v. Central R. Co. of New Jersey, 167 A. 757, 11 N.J.Misc. 622; Krause v. Southern Pac. R. Co., 135 Or. 310, 295 P. 966; Yackee v. Village of Napolean, 135 Ohio St. 344, 21 N.E.2d 111.

■ The general duty of a railroad at common law with respect to highways crossed by its line is defined in Whitby v. Baltimore C. & A. Ry. Co., 96 Md. 700, 54 A. 674. It is there said that it is the duty of every railroad company properly to construct and maintain crossings over all highways on its line in such a manner that they shall be safe and convenient to travelers so far as it may be done without interfering with the safe operation of the road; and that as a general rule the duty of keeping a public crossing in repair is the same as the duty of construction and that a railroad company must keep its tracks and approaches in a condition fit to meet the demands of public travel. This was written with respect to crossings which the railroad itself constructs and is obliged to maintain, and the situation is modified when existing lines are crossed by new highways established by government authority. Nevertheless a railroad is not relieved of all responsibility even in such a case. It must adjust itself to new conditions and new facilities provided in the public interest and may not ignore the dangers incident to its own use of the crossing merely because it was first on the ground. Obviously this is true with respect to the operation of trains crossing the public highway at grade, and the condition of the crossing as affecting the safety of travelers using the highway may also fall within the obligations of the railroad under local statutes or conditions. Spooner v. Delaware & C. R. Co., 115 N.Y. 22, 21 N.E. 696; Allen v. New Haven & C. R. Co., 50 Conn. 215; Chicago & C. R. Co. v. Taylor, 79 Okl. 142, 192 P. 349; 51 C. J., Railroad § 362.

■ These matters are usually regulated by statute and it is generally held that the legislature may require railroad companies to provide safeguards at crossings and that this power is not effected by the fact that the intersecting highway was laid out after the construction of the railroad. Northern Pac. R. Co. v. Minnesota, 208 U.S. 583, 28 S.Ct. 341, 52 L.Ed. 630; State ex rel. Minneapolis v. St. Paul, M. & M. R. Co., 98 Minn. 380, 108 N.W. 261, 28 L.R.A.,N.S., 298, 120 Am.St.Rep. 581, 8 Ann.Cas. 1047; St. Paul, M. & M. R. Co. v. State of Minnesota ex rel. Minneapolis, 214 U.S. 497, 29 S.Ct. 698, 53 L.Ed. 1060; 44 Am.Jur., Railroads, § 395. Even where there is no statute covering the situation, the duty of a railroad to exercise due care in its operations cannot be disputed.

■ The part played by the Railroad in determining the nature and sharing the expense of the crossing in this case should be viewed in the light of these rules of law. Doubtless the Railroad would have preferred to be let alone, but it was not indifferent to the project when it was proposed and the determination of the State Roads Commission to build the highway across the tracks was announced. When this occurred the Railroad took steps to influence the kind of crossing to be installed. It does not appear whether an overhead bridge was ever in mind, but both a grade crossing and an underpass were given consideration. The former was doubtless the cheaper but the Railroad knew that it would be extremely dangerous and that it would involve the burden of taking precautions to prevent accidents and the probable payment of damages when accidents occured. The Railroad presented these objections to the Commission and secured the approval of an underpass by agreeing to pay a substantial part of the costs; and the Railroad actually participated in the enterprise by approving the plans and paying its agreed part of the expense. Under this circumstance it is immaterial that the final decision lay within the scope of the Commission's authority. The Railroad abandoned its right to require the Commission to erect and maintain at its own expense the crossing of the old line by the new road, and voluntarily became a participant in the creation of a dangerous condition; and it cannot now escape the liability attendant upon its act. It is idle to suggest that its inquiry went no further than to ascertain whether the bridge would be strong enough to carry the trains, for the plan of the entire structure was submitted to and approved by it, and it could not escape liability for its act by shutting its eyes to all but its immediate interests.

■ Nor may the Railroad escape by pointing to the statutes which gave exclusive jurisdiction to the Commission to set up warning signs along the highways of the state. The Railroad subjected itself to liability for damages from failure to give warning by joining in the construction of a crossing so dangerous that warning signs became imperative. Its liability rests upon the same duty to exercise due care as that of an employer who engages an independent contractor to do work which the employer should recognize as necessarily creating an unreasonable risk of harm unless precautions are taken. In such case the employer is liable if he himself fails to exercise due care to provide such precautions; and even if the contractor agrees to take such precautions, the employer is liable for harm caused by the failure of the contractor to keep his promise. Bonaparte v. Wiseman, 89 Md. 12, 42 A. 918, 44 L.R.A. 482; Philadelphia B. & W. R. R. v. Mitchell, 107 Md. 600, 604, 69 A. 422, 17 L.R.A.,N.S., 974; Restatement of Torts, §§ 413, 416, 418. The Railroad Company and the State Roads Commission did not occupy the relationship of employer and employee in this case but they did embark upon a joint enterprise so dangerous that the duty to give warning was clear and obvious from the beginning. When this duty was neglected and harm ensued, they became contributing tort feasors, each of whom was responsible for the consequences. The Railroad Company cannot escape liability on the ground that it was obliged to rely on the Commissioner to furnish the safeguards which the joint enterprise required. See Restatement of Torts, §§ 875 to 878.

■ The immunity of the Commission does not alter the situation. The general rule is that if one joint tort feasor is protected against liability by a personal privilege, that fact does not affect the liability of the other joint tort feasors. Rice v. Cooledge, 121 Mass. 393, 23 Am.Rep. 279; Restatement of Torts, Vol. 4, §§ 880, 882.

The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.