BENSON *v.* LOEHLER, Executrix, Etc., et al.

[No. 178, September Term, 1961.]

*Decided March 13, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, HORNEY and MARBURY, JJ.

*Albert D. Brault,* with whom were *Albert E. Brault* and
*Lawrence T. Scott* on the brief, for appellant.

Submitted on the brief by *J. Joseph Barse, H. Mason Welch*
and *J. Harry Welch* for appellees.

HORNEY, J., delivered the opinion of the Court.

The plaintiff-appellant (Moses Benson) brought this action
to recover damages for injuries sustained as the result of strik-
ing his head against a steel beam erected above a public alley
in Washington, D. C., between buildings belonging to the
defendants (James E. Halley[1] and David Keppel). This ap-
peal is from the judgment for costs entered against the plain-
tiff in favor of the defendants upon the granting by the trial
court of a motion for a directed verdict.

The beam involved was one of two that had been erected
in the year 1921 to support a wooden bridge or catwalk con-
necting the building—acquired by James E. Halley in De-
cember of 1950 or January of 1951—located at 1220-22 North
Capitol Street and the building—acquired by David Keppel
in the year 1948—located on the premises across the alley in
the back of the Halley Building. The bridge had been erected
at a time when both buildings were occupied by the Washing-
ton Planograph Company. The wooden portion of the bridge
was removed by the occupant sometime during the year 1950,
but the beams were not. The record shows that, although one
of them was then an owner, neither of the defendants knew
whether a permit had been obtained to remove the structure.
The only other evidence on this point was that of a long-time
employee of the planograph company. In answering an inter-
rogatory as to whether a permit had been obtained to remove
the bridge, the employee replied "not to my knowledge," and

---

1. James E. Halley died after suit had been filed, and Thelma H.
Loehler, the executrix of his estate, was substituted as a party de-
fendant.

he did not recall whether an inspection had been made by an agent of the Commissioners of the District of Columbia. On the date of the accident there was no sign or other device to warn motorists using the alley of the existence of the beams or the height of the clearance between them and the bed of the alley. After the accident, the officer who investigated it ascertained by measurements he then made that the beams were twelve feet and three inches from the paved surface of the alley and that the height of the trash truck from the ground to the top of the tail gate was nine feet and three inches.

On July 2, 1958, the plaintiff, who was an employee of the District Sanitation Department, was tamping or "walking" down trash in the back of the half-filled truck as it passed under the beams in the alley. At the time he was standing sideways and was watching his feet in order to avoid losing his balance on objects that might be in the trash. He did not see the beams and the side of his head struck one of them. The blow toppled him from the truck into the alley. He sustained numerous injuries, including a fractured leg, as a result of the fall.

The plaintiff had been employed by the department as a trash man for five years, but he was not familiar with that particular route and he had never been in the alley in question before. Normally he worked on the ground in a crew of five as one of the two passers on another route, but on the day of the accident he was working as a "swing man" and was replacing one of the two catchers who usually worked on the truck. (The fifth man of the crew operates the truck as it proceeds slowly from stop to stop through the alleys.)

The other catcher, who was working with the plaintiff in the front of the trash bin, passed safely under the beams. He was somewhat shorter than the plaintiff and the trash was lower in front than it was in the back where the plaintiff was working, but he did not see the beams either, and for that reason had no opportunity to warn his fellow worker.

While the record is somewhat confusing as to whether the plaintiff had ever received instructions to the effect that when he was riding on the truck he should always face forward and not backward, it is clear that his foreman had never given the

plaintiff either an oral or written instruction to that effect. And it is not controverted that when the accident happened, the plaintiff was standing sideways on the truck with his back toward the center of the trash bin.

The amended declaration contained two counts. In one of them, the plaintiff, among other things, alleged in effect that despite the duty of the defendants to maintain the buildings in such manner as would leave the alley between them in a reasonably safe condition for those, including himself, lawfully using it, they nevertheless, with knowledge of the hazardous condition created by the beams, negligently and carelessly permitted the beams to remain at a dangerously low height above the alley and failed to warn those lawfully using the alley of the hazardous and dangerous condition. The other count alleged in effect that the defendants, with full knowledge of the existence of the beams, allowed them to exist in violation of law; that the beams constituted an unlawful and unreasonable obstruction of the alley and a danger and hazard to the safety, health and welfare of the public in its use of the alley in that the beams were at a dangerously low height and that their existence was prohibited by the laws of the District of Columbia; and that such beams did thereby constitute a public nuisance.

Before the day of the trial, the plaintiff notified the defendants, pursuant to § 50 of Art. 35 of the 1957 Maryland Code, of his intention to rely on the common law and the statutory law of the District of Columbia as the substantive law of the case.

A review of the building codes of the District of Columbia within the last seventy years shows that twelve such codes have been adopted from time to time, but it appears that we are concerned with only two of them: that adopted in 1917, which was in effect on August 21, 1921, when a building permit was issued to the planograph company to erect an open bridge over the alley in question; and that promulgated in 1941, which was in effect in 1950, when the permittee, upon ceasing to use the bridge, removed the wooden superstructure, but not the supporting steel beams. At the time the bridge was

erected, the building regulations required a clearance of only twelve feet, and there was apparently no provision then as to its removal in the event the use of it as a bridge was discontinued. But in 1950, when the wooden parts of the bridge were removed, the required height of such alley bridges as were then permitted had been extended to fourteen feet in the clear above the roadway. See § 406-01 of the Building Code of 1941. And that same code, in addition to providing, by § 110, that all inconsistent regulations theretofore made were thereby repealed, further provided, by § 201-02 (d), that permits for the erection, alteration, repair and removal of buildings and structures and their appurtenances should "be obtained in advance from the inspector of buildings."

When the case was concluded on behalf of the plaintiff, the trial court informed counsel for the plaintiff that if the case was to go to the jury he would be afforded an opportunity to request instructions as to the law. Immediately following this announcement, counsel for the defendants moved for a directed verdict, and after a recess, the motion was granted by the court without stating its reasons for so doing. However, in the appellant's brief we are informed that the trial court ruled in chambers that the plaintiff had not established a *prima facie* case either on the theory of nuisance or negligence, and that the question of whether the plaintiff was contributorily negligent—although presented on the appeal to this Court— was neither considered nor ruled on by the lower court. As a consequence, the principal questions requiring consideration by us is whether the plaintiff had produced evidence from which the jury could have found negligence on the part of the defendants and/or that the defendants were maintaining a nuisance. In this case both of the alleged wrongs arise out of the same facts and circumstances, and, although both causes of action are based on a breach of duty, there is a difference in the nature of that duty and in the resulting consequences. "A nuisance exists because of a violation of an absolute duty so that it does not rest on the degree of care used but rather on the degree of danger existing with the best of care. Negligence, on the other hand, is the violation of a relative duty for fail-

ure to use a degree of care required under particular circumstances." *Sherwood Bros., Inc. v. Eckard,* 204 Md. 485, 105 A. 2d 207 (1954).

## The Action For Negligence.

We must, of course, consider the evidence in the light most favorable to the plaintiff in order to determine whether the ruling of the lower court was proper with respect to the count for negligence. There was evidence, or at least an inference, that the removal of the wooden part of the bridge had dangerously reduced the likelihood of the supporting beams being seen by those who were required to work (as the plaintiff was) in the back of an open trash truck of the kind that were in general use by the sanitation department. There was evidence to support an inference that the owners of the buildings or their predecessors in title may have failed to exercise due care when that part of the alley bridge most likely to be seen was removed without permission and the use of the remaining portion was discontinued. And there was positive evidence that the obstruction which had been allowed to remain was not posted on the day of the accident with a sign or other device designed to attract the attention of motorists using the alley and thereby warn them of the height of the clearance under the beams. It is therefore the contention of the plaintiff that the cumulative effect of these facts and circumstances was sufficient evidence for the jury to consider whether the defendants were in fact negligent. We agree.

While we have not been referred to, nor have we found, a case in the District of Columbia founded on negligence for failure to use due care in maintaining a private bridge above a public alley, there are analogous cases based on negligence in other jurisdictions with respect to the maintenance of railroad trestles and bridges over public streets and highways. The principle of these cases is that a franchise holder has a duty to so construct and thereafter maintain such structures as to meet the demands of public travel, and, when required, to take precautionary measures to warn travelers of the existence of a dangerous condition.

In *Illinois Central R. Co. v. Farris,* 259 F. 2d 445 (C. A. 5

1958), where it was held that a railroad must so construct its trestles as to afford reasonably sufficient clearance or headway for ordinary vehicular traffic, the Court, citing 3 Blashfield, *Cyclopedia of Automobile Law and Practice,* § 1872, pointed out (at p. 447) that "[t]his duty does not cease when a State Road Commission or other appropriate state authority approves the construction of a bridge and underpass. See also *Contino v. Baltimore & Annapolis R. Co.,* 178 F. 2d 521 (C. A. 4 1949), in which it was said that the duty of a railroad to maintain its highway bridges is a continuing one requiring consideration of changing conditions. And cf. *Whitby v. Balto., C. & A. Ry. Co.,* 96 Md. 700, 54 Atl. 674 (1903).

Other than the point with respect to the construction and continued maintenance of highway bridges, there is another important factor in this case concerning the absence of notice or a warning. In *Krause v. Southern Pac. Co.,* 295 Pac. 966 (Ore. 1931), in which the facts were quite similar to those in the case at bar, a farm boy, standing in the back of an open freight truck tending pigs, was injured when his head came in contact with a steel girder as the truck passed under an overhead railroad trestle. It was there held that, absent notice to the contrary, the occupant of the body of the truck had a right to rely on the assumption that the railroad company and the municipality (which had also been sued) would not maintain an obstruction to the highway that was dangerous to those using it by ordinary means of travel. Furthermore, even if it is assumed that the owners had obtained permission to leave the steel beams above the alley, there would still be a question of fact as to whether notice of their existence should have been given by a sign or other warning device. See *Barrett v. Southern Pac. Co.,* 277 Pac. 481 (Cal. 1929), where, in a case involving the construction of a pier in the middle of a highway to support a railroad trestle, the Court, in pointing out that climatic conditions required a color scheme on the pier different from the grayish color of the fog, stated (at p. 484) that the exercise of ordinary care would require "the installation of red lights or other danger signals on or near the pier as a warning to travelers."

Whether or not the defendants were guilty of negligence was clearly a question of fact for the jury, and we so hold.

## The Action For Nuisance.

The propriety of taking the case from the jury with respect to the count for nuisance, depends on whether there was evidence of an intent to abandon and an actual abandonment by the permittee of the privilege granted to erect and use the alley bridge, and, if so, whether there was evidence to support a finding that permitting the supporting beams to remain, after the wooden part had been removed, was a menace or obstruction to vehicular traffic and therefore a nuisance.

It appears that in the District of Columbia the rule is that a public nuisance could not arise with respect to the alley bridge erected in accordance with the specifications of the building permit so long as the permittee continued to *exercise* the privilege granted by authority of law. *Hewett v. Telegraph Co.,* 15 D. C. (4 Mackey) 424 (1886). See also *Neitzey v. Railroad Co.,* 16 D. C. (5 Mackey) 34 (1886). But when the permittee ceased to use the privilege granted and removed the wooden superstructure but not the steel supports, a different situation arose. For the owners of the buildings and their successors in title (including the defendants) did not acquire by the privilege granted a prescriptive right to continue to obstruct the alley with the steel beams after the right to use the bridge had ceased or expired as a result of its nonuser. Cf. *Huebschmann v. Grand Co.,* 166 Md. 615, 172 Atl. 227 (1934). See also *Adams v. Commissioners of Trappe,* 204 Md. 165, 102 A. 2d 830 (1954) [without a permit, no person can permanently encroach on a street for a private purpose, and all such encroachments are a nuisance].

Other than this, there was (as hereinbefore stated) at least some evidence to support an inference that a permit to remove the bridge had not been obtained as the law then required. The obtaining of a permit to remove the bridge (if it were in fact obtained) would clearly be evidence of an intention to abandon it; and the mere fact that the beams were left in place would not negative such an intention. *Block v. Fisher,* 103 A. 2d 575 (D. C. Mun. App. 1954). Cf. *Maryland & Pa.*

*RR. Co. v. Mer.-Safe, Etc., Co.,* 224 Md. 34, 166 A. 2d 247 (1960).

That an object or condition which materially and unlawfully interferes with the free and safe enjoyment of a public street or highway constitutes a public nuisance has been recognized in the District of Columbia for many years. See *Hewett v. Telegraph Co., supra.* Furthermore, there are cases holding that rails, poles and other structures placed or erected in, on or above a street or highway for a particular authorized use or purpose may become a nuisance by reason of their abandonment or the discontinuance of their use. And, as a consequence of such abandonment or discontinuance, the owner of such objects or structures may incur liability for injury therefrom by permitting them to remain where they were after a discontinuance of use, depending, of course, on a duty to remove such objects or structures or take precautionary measures (if that be feasible) to guard against possible injury from them.

In *Citizens' Ry. & Light Co. v. Johns,* 116 S. W. 62 (Tex. Civ. App. 1908), where the occupant of a wagon was injured when it ran into a rail protruding from an unused track that had been placed there by the defendant's predecessor with the idea of obtaining a franchise to operate a railway, it was held that the plaintiff was entitled to recover for his personal injuries. And in *Reed v. Edison Elec. I. Co.,* 114 N. E. 289 (Mass. 1916), where the lower court had directed a verdict for the defendant, it was held on appeal that there was evidence from which it could be found that a discarded pole left on a street for ten days after it had been taken down was an obstruction and a menace to traffic and therefore a public nuisance. See also 25 Am. Jur., *Highways,* §§ 273, 486, and particularly the annotation in 102 A.L.R. 677, for other cases both pro and con. And cf. *District of Columbia v. Dempsey,* 13 App. D. C. 533 (1898) and *Dobbins v. Western Union Tel. Co.,* 50 So. 919 (Ala. 1909), which, although based on negligence instead of nuisance, also involved abandonment of use.[2]

---

2. In *District of Columbia v. Dempsey,* 13 App. D. C. 533, where a broken telephone wire was permitted to dangle from a tree for four months in such a way as to form an obstruction to the safe

Although obviously not as complete and as satisfactory as it might have been, there was evidence from which the jury could have found that the defendants by permitting the steel beams (which apparently served no useful purpose) to remain for so long a time at a height of no more than approximately twelve feet had thereby created and maintained a public nuisance that was an unlawful and unreasonable obstruction of the alley in that it endangered the safety of those who were entitled or required to use it as a public thoroughfare.

Whether or not the steel beams constituted a nuisance *per se* or a nuisance *per accidens,* is a question we need not decide in this case, for in the posture in which the case comes to us, our function is limited to deciding whether the motion for a directed verdict should have been granted. For the reasons herein stated, we hold that the jury should also have been allowed to decide on proper instructions by the court whether there was a nuisance in fact.

While the question of contributory negligence was not ruled on below, we may add that the evidence produced does not appear to have been sufficient to show that the plaintiff had been contributorily negligent as a matter of law.

> *Judgment reversed and case remanded for a new trial; appellees to pay the costs.*

---

use of the street, both the District and the telephone company (which was also sued) were held liable to a bicycle rider who was injured when he was caught in the loose end of the wire that had been tied into a loop a short distance above the street. And in *Dobbins v. Western Union Tel. Co.,* 50 So. 919 (Ala.), it was held that the telegraph company, which had created an obstruction by leaving a sawed off pole standing about three feet above the surface of a street for many years, was guilty of negligence and liable to a pedestrian who had stumbled over it without negligence on his part.