## PERLMAN v. CHAL–BRO., Inc.

### No. 306.

Municipal Court of Appeals for the
District of Columbia.

Aug. 24, 1945.

Rehearing Denied Sept. 5, 1945.

Milton Dunn, of Washington, D.C., for appellant.

A. Leckie Cox, of Washington, D.C. (Louis M. Denit, of Washington, D.C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appellee, Chal-Bro., Inc., had obtained judgment in another case against Louis Perlman, husband of Faye Perlman who is appellant here. On that judgment a writ of attachment was issued and the United States Marshal seized monies in the cash register of a certain grocery store. Appellant, Faye Perlman, immediately served notice on the Marshal that she claimed the money as her own and thus instituted the familiar "trial of right of property" proceeding prescribed by Code 1940, § 11—744.[1] As provided by Code 1940, § 11—745, the case was docketed as an action by Faye Perlman as claimant against Chal-Bro., Inc., the attaching plaintiff as defendant, "and tried in the same manner as other cases before the municipal court."

The trial judge made a general finding for the attaching creditor and denied claimant's demand for the return of the money seized.

At the trial claimant offered her own evidence and that of her husband. Claimant testified that she owned and operated the grocery store where the attachment had been levied; that she had purchased it from Rubin Goodstein in September 1943 for $3100; that she paid $2000 in cash, $1500 of which she borrowed from a brother, and $500 of which she had on hand, and that the balance of $1100 was secured by a promissory note. There was in evidence a bill of sale and affidavit under the Sales in Bulk Act, both of which ran from Rubin Goodstein to Faye Perlman. She further testified that her husband Louis Perlman put no money into the business, and had no interest in it; that all he did was to work around the store and run errands; that he had no money, had not worked for several years, and that because of injuries received in the last war he could not hold a job.

Mr. Perlman testified that his wife owned the grocery business and that he had no interest in it; that he was not the owner or manager but merely helped around the store and ran errands; that Mrs. Perlman gave him the money to go to the District Building and get an occupancy permit for the store; that there they asked his name

---

[1] This section "provides a summary statutory method * * * of determining the right of property and restoring possession thereof to the rightful owner." Tribby v. O'Neal, 39 App.D.C. 467.

and the address of the business and that he signed his name to two different papers.

Appellee introduced in evidence applications signed by Louis Perlman for an occupancy permit and permits to operate the grocery store and copies of the permits issued thereon. On one of these applications the name of Louis Perlman was signed as "proposed occupant" and on two others as "owner or manager."

It was upon this evidence that the trial judge refused to return the attached property to Mrs. Perlman. The question before us is whether such holding was wrong as a matter of law—or to be more exact, whether it was "plainly wrong or without evidence to support it" within the meaning of the statute prescribing and limiting the scope of our review. Code 1940, § 11—772(c). Here the only verbal testimony was that Mrs. Perlman owned and controlled the funds attached; and that testimony was not directly controverted. Ordinarily, positive testimony which is not inherently improbable, inconsistent, contradicted, or discredited cannot be disregarded or ignored by judge or jury.[2] But where such evidence is inconsistent with other facts or circumstances in evidence it is not necessarily binding on the trier of the facts,[3] especially where the witness is an interested party.[4]

Here both Mr. and Mrs. Perlman swore that the money under attachment (and the store where it was seized) belonged to Mrs. Perlman and to her alone. No witness confronted them in the courtroom to fasten the label of falsity upon their testimony. To that extent and in that respect the evidence in her behalf was uncontradicted. If there were nothing more in the case she would almost certainly have prevailed against the attaching creditor. But there were other circumstances which had a bearing on the issue, circumstances which tended at least to cast doubt upon claimant's position.

One of these circumstances was that claimant's husband had three times applied for and received from the District of Columbia government permits or licenses for the business based upon his written declaration that he was the "proposed occupant" of the premises or "owner or manager" of the business.

Another circumstance was that the actual permits were presumably "conspicuously posted on the premises" as required by law[5] and claimant could hardly have failed to know that they bore her husband's name rather than her own.

Still another circumstance was that the brother from whom she claimed to have borrowed the purchase money was not produced as a witness; nor did she produce the former owner to testify in her behalf.

It may, perhaps, reasonably be argued that no one of these circumstances standing alone would be sufficient to neutralize the testimony of claimant and her husband. But it seems to us that taken together they can be said to raise rather serious questions about claimant's position and leave the evidence in such condition that "two different conclusions might reasonably have been drawn from it." And we do not forget that we then have no right to disturb the finding of the trial court. Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9.

Finally we must mention as we have done before, that the trial judge had the opportunity, which we do not, to judge the witnesses by their appearance and demeanor, to observe whether they answered frankly and spontaneously or haltingly and evasively—in short whether their testimony had the ring of truth. We have no such opportunity; we have only the paper narrative of what happened at the trial.[6] That narrative does disclose doubtful aspects in the case. But such doubts arise from the question of credibility of witnesses. We cannot resolve those doubts without assuming unto ourselves the right to reweigh the evidence.

Affirmed.

[2] Stone v. Stone, 78 U.S.App.D.C. 5, 136 F.2d 761.

[3] O'Laughlin v. Helvering, 65 App.D.C. 135, 81 F.2d 269; Thurston v. McLellan, 34 App.D.C. 294; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434; Lowenstein v. Platt & Co., 2 Cir., 58 F.2d 173; Easton v. Brant, 9 Cir., 19 F.2d 857.

[4] Thurston v. McLellan, supra; Ætna Life Insurance Co. v. Hagemyer, 5 Cir., 53 F.2d 636.

[5] Code 1940, § 47—2306.

[6] See Yellow Cab Co. v. Sutton, D.C. Mun.App., 37 A.2d 655, and cases there cited.