## LITTLE v. DILLING.

### No. 339.

Municipal Court of Appeals for the District of Columbia.

March 28, 1946.

Edward J. Lynch, of Washington, D. C. (W. Hobart Little, of Washington, D. C., on the brief), for appellant.

James J. Laughlin, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, Associate Judge.

CAYTON, Chief Judge.

Plaintiff appeals from an adverse judgment in a suit brought by him to recover $480 for legal services performed for defendant in the so-called sedition case.[1] He assigns nine errors, but as all of them deal with the sufficiency of the evidence to support the finding, we will confine our discussion to a summary of the essential testimony.

The testimony for plaintiff detailed his qualifications and experience and recited the circumstances under which his services were engaged by defendant. He testified that in February 1944 defendant requested him to act as her "local attorney of record" and that under that arrangement he was to accept service of papers for her and forward them to Chicago; that his duties then were to be merely clerical and involved no exercise of judgment; and that at that time defendant gave him $20 for expense money. Immediately thereafter, working with other attorneys, he sought a reduction in her bond and also entered a formal appearance. He testified that during the next few weeks he talked with defendant several times by long-distance telephone, after which she forwarded to him an affidavit of prejudice against the judge presiding at the trial, which affidavit she requested him to sign and file; that he talked with other attorneys in the case about the affidavit and decided not to sign it, but did file it without his signature; that although defendant sought to persuade him to do so, he refused to sign the affidavit because such action was beyond the scope of the duties he had undertaken, and because he had received it too late for filing under the statute; that after this matter arose, he telegraphed defendant that in the future he would charge her $50 a week for his services; that she did not reply but later admitted she had received the telegram; that on April 14, before the actual trial commenced, he was the only attorney representing defendant in court, and he rose a number of times in her behalf; that after April 17 defendant had other counsel present, and plaintiff did not thereafter sign any papers or pleadings for her; that plaintiff also represented four other defendants at the trial; that during the trial he informed defendant that he expected payment for his services but received only abuse in reply; that he made his first demand on the defendant for $500 in July 1944; that he had had no definite agreement with her for the payment of any specific sum; and that he withdrew his appearance on July 25, 1944.

Plaintiff offered as a witness an attorney who had represented another defendant in the sedition trial, and who testified that plaintiff had performed his services in a competent manner and was present in court every day until July, when another of his clients was severed from the case; but he did not remember plaintiff getting to his feet for Mrs. Dilling after the trial began, nor did he know what plaintiff did for her.

For the defendant two witnesses, defendants in the sedition trial, testified that plaintiff had said he would have signed defendant's affidavit of prejudice if he had been paid; that plaintiff made no motions for defendant; and that plaintiff did not speak for her in court.

The depositions of defendant and two other witnesses were read at the trial below. Mrs. Dilling denied employing plaintiff to represent her, and said he had offered to act as her local counsel of record "absolutely gratis." She testified that plaintiff insisted he wanted nothing, but that she gave him a twenty-dollar bill "for postage and some other possible expense"; that all his telegrams and phone calls were collect; that she did not consider the offer he made shortly before the trial to act as her counsel at $50 per week, and did not reply to it; that he did not again mention this matter after she arrived in Washington for the trial; that plaintiff told her on the telephone that he might have signed the affidavit of prejudice had he been a "paid attorney"; that in July 1944 she received a bill for $200 for his services; that plaintiff never did anything or performed any service in her behalf in connection with the sedition case.

In her answers to cross-interrogatories she stated that plaintiff agreed to act as her local counsel of record with the sole function of accepting service of papers to comply with the local statute; that this service was to be gratis, not only before the trial actually started but afterwards as well; that she did not at any time discuss her defense with plaintiff or give him any instructions concerning it, but did criticize his failure to certify the affidavit of prejudice. The testimony of defend-

---

[1] United States of America v. McWilliams et al., D.C., D.C., 54 F.Supp. 791.

ant's two witnesses was substantially the same as her own.

It will be seen at once that there was conflict in the evidence, direct and sharp, on the essential issues: whether plaintiff had agreed to act without compensation; whether such agreement extended beyond the beginning of the actual trial; whether the arrangement was such as to require plaintiff to certify to the affidavit of prejudice; and finally, whether plaintiff actually performed services entitling him to compensation.

■ Because of this conflict the evidence shaped up in such a way "that either one of two different conclusions might reasonably have been drawn from it * * *." Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9. And we cannot say with any conviction that the finding arrived at by the trial judge was "plainly wrong or without evidence to support it" under the statute prescribing and limiting our scope of review. Code 1940, § 11—772 (c). Perlman v. Chal-Bro., Inc., D.C.Mun.App., 43 A.2d 755; Watwood v. Potomac Chemical Co., D.C.Mun.App., 42 A.2d 728.

■ Plainly, the case was a close one; but when we look at the evidence as a whole, we cannot escape the conclusion that impressive though plaintiff's evidence may have been, defendant was entitled to prevail if her version on the main issues was correct. In such a situation, to quote again from Nolan v. Werth, supra, we can only say "that if the testimony is not sufficient to show that the trial court's decision is necessarily right, it wholly fails to show that it is necessarily wrong * * *."

Affirmed.

