## CONRAD v. PORTER.
### No. 1022.

Municipal Court of Appeals for the
District of Columbia.

Argued March 5, 1951.

Decided April 5, 1951.

J. Joseph Barse, Washington, D. C.,
John R. Daily, H. Mason Welch, and J.
Harry Welch, all of Washington, D. C.,
on the brief, for appellant.

Earl H. Davis, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff was the owner of an automobile which was demolished while legally parked on a street in front of his home. His car was hit by a truck owned by defendant and driven by a third person to whom the truck had been loaned by defendant's employee. Damages were stipulated. The case being submitted to a jury defendant was held liable. He appeals on the ground that his motion for a directed verdict at the conclusion of the evidence or for judgment notwithstanding the verdict should have been granted as a matter of law.

No serious question is raised as to the negligence of the person who was driving the truck and the trial turned completely on the responsibility of the defendant truck owner. He owns six or seven other trucks which were engaged in the business of hauling ashes and miscellaneous material. One of his contracts is to haul ashes from Walter Reed Hospital located on Georgia Avenue, N.W. Since a part of this arrangement is that the ashes be removed from the hospital early Sunday morning and since his truck yard is closed on Sunday, he and his general manager had established the custom of allowing his driver to take a truck home Saturday evening with instructions to get the ashes from Walter Reed Hospital, convey them to Kensington, Maryland, and then keep the truck at the driver's home Sunday night and return it to the office Monday morning. The accident occurred early Sunday morning when the truck was being driven by a man named Baylor, a friend to whom the regular truck driver, George Washington, allegedly loaned the truck.

The location of various addresses have some bearing on the question of responsibility for the accident. All of these addresses lie within a circle with a radius of about five blocks and a center at Twenty-fifth and M Streets, N.W. The truck yard of defendant Conrad from which Washington left with the truck late Saturday afternoon is at 604 Twenty-fifth Street. Plaintiff Porter lives at 1152 Twenty-fifth Street and his car which was struck was parked on the east side of Twenty-fifth Street just south of M Street. Baylor, driver of the truck at the time of the accident, lives at 1269 Twenty-fifth Street. Washington lives at 1021 Cecil Place, also south of M Street and about five blocks west of Twenty-fifth Street. The other address claimed to be involved is at Twenty-first Street and Ward Place near the corner of Twenty-first and O Streets.

The stories of Washington and Baylor differed in one or more important respects. According to Washington, when he left the Conrad truck yard at 604 Twenty-fifth Street, he went directly to the Twenty-first Street and Ward Place address where he remained in a poker game until six o'clock the next morning. Baylor was one of those present, according to Washington, and some time after midnight he loaned Baylor the truck to get some cigarettes and sandwiches at Wisconsin Avenue and M Street. He didn't see Baylor again until after the accident. According to Baylor, however, Washington went to Baylor's home at 1269 Twenty-fifth Street; Baylor said he never went to Twenty-first Street and Ward Place; he never engaged in a poker game and the truck was loaned to him at his home on Twenty-fifth Street. Instead of going to Wisconsin Avenue and M Street for the cigarettes and sandwiches, he went to the Southwest section of the city and was returning home when the accident occurred. The only importance of these differing stories is the reliance to be placed on Washington's credibility.

The case as tried depended entirely upon the evidence as related to the District of Columbia Owners' Financial Responsibility Act, Code 1940, § 40–403 which in its pertinent part provides: "Whenever any motor vehicle, after the passage of this chapter, shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall, in case

of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner."

In Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552, 553, it was said that: "The effect of this provision is simply to shift the burden of proof and to impose on the defendant owner the affirmative duty of proving that the car was not at the time of the accident operated with his express or implied consent. Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632. This presumption continues until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission." It was added that in that case the owner had testified positively and unequivocally that the driver had taken the car without the owner's knowledge, authority, or consent, "and his uncontradicted statement to this effect, of course, overcame the statutory presumption, just as similar testimony overcomes, as we have often held, the common-law presumption that an agent is on his master's business when he drives his master's car[ citing cases]. In each of these cases the positive testimony which overcame the presumption was that of the owner."

■ The same interpretation of the Act was included in Hiscox v. Jackson, 75 U.S. App.D.C. 293, 127 F.2d 160, which threw further light on its proper construction by holding that doubt might be thrown on the owner's testimony and the case thus become one for the consideration of the jury if proof offered by the owner contains inconsistencies and self-contradiction leaving some doubt as to the absolute credibility of the witnesses—two typical jury functions.[1]

It is against the background of these decisions that we must consider the evidence in the present case. Conrad, the owner of the truck, testified that all of his drivers including Washington had been instructed not to use the trucks for private use and not to use them for anything "but what we tell them to do" and also that the drivers had been instructed never to allow anyone else to drive the trucks. He said that George Washington had been employed by him as a truck driver for twenty-five years and that he had never been given permission to use a truck for his personal use. On this particular weekend, he said he did not know Washington had the truck. He added, however, that he left the conduct of his business to Bazzle, his general manager.

Bazzle in turn told of the practice of allowing Washington to take the truck home over the weekend when ashes were to be collected at Walter Reed Hospital on Sunday. He said that on this particular weekend Washington was not given special instructions as to the use of the truck but that on previous similar occasions during the winter in question he had instructed Washington "to take the truck home and, of course, not to use it for anything else except the job that was given him to do," and that also during that winter Washington had received instructions "to let no one else drive it, of course, except himself." He also testified that he had never heard of anyone else, except Washington, driving the truck. He testified further that Washington was still in the employ of Conrad.

Washington testified that when he was hired he had received instructions to use the truck just for the work he was supposed to do and that "one of the main things they tell us is not to let anyone else drive the trucks. No one is supposed to drive a truck but the one that is using it." He said he had never previously departed from his instructions but that on the night in question he had allowed Baylor to take the truck keys and drive it.

■ The testimony of the owner of the truck and of his manager, both as to the use to be made of the truck and as to its being driven by any third party was not contradicted in any way. Nor was the testimony of Washington on these points

1. See also Rice v. Simmons, D.C.Mun.App., 53 A.2d 587.

780

contradicted, although, as shown, he was contradicted as to his actual movements on the night in question. There was some slight leading of defendant's witnesses by defendant's counsel but this was stopped by the court when objection was made. Possibly a shade of doubt could be cast upon Bazzle's testimony as to the instructions given Washington by Bazzle's use of the phrase "of course" in reciting such instructions, but this does not necessarily follow and, read as a whole, the testimony of defendant's witnesses on the vital points was uncontradicted and in no sense inherently improbable. In Rosenberg v. Murray, supra, the late Mr. Justice Rutledge then a member of the United States Court of Appeals, wrote a dissenting opinion and stated among other things that in the absence of evidence of disinterested witnesses, the issue of credibility must be submitted to the jury. This point was mentioned without approval in the subsequent case of Hiscox v. Jackson, supra, but the court went on to say that in the latter case the owner's testimony was not uncontradicted. Mr. Justice Stephens concurred in the result of the Hiscox decision and indicated his disagreement with the rule laid down in Rosenberg v. Murray because "it ignores the proposition that the credibility and dependability of testimony—even uncontradicted (as distinguished from undisputed) testimony—is for the jury." [127 F.2d 162.] But he added that the Rosenberg rule is now the law in this jurisdiction. We feel compelled to follow that rule and, following it, to conclude in the present case that the trial court erred in submitting the case to the jury and in refusing to award a judgment for defendant notwithstanding the verdict.

In the face of the uncontradicted testimony of defendant and his manager and of the driver of the truck in its essential points that Washington had been ordered not to use the truck on his personal business and had also been ordered not to allow any third person to drive it, we cannot escape the conclusion that the man who was driving this truck at the time of the accident was not doing so with the express or implied consent of the owner.

So driving, he was not the agent of the owner and the owner was not responsible.

 We think we should add plaintiff seeks to support the verdict of the jury in plaintiff's behalf and the submission of the case to the jury on the theory that defendant was negligent in turning the truck over to Washington for the weekend, Washington in turn was negligent in turning the truck over to Baylor and that such negligence was a proximate cause of the accident. We believe, however, that neither the pleadings nor the proof justifies such a conclusion.

Reversed with instructions to enter judgment for defendant.