**BRUNI**

v.

**DULLES, Secretary of State.**

Civ. No. 4471–52.

United States District Court,
District of Columbia.

May 13, 1954.

Jack Wasserman, Washington, D. C., for plaintiff.

Leo Rover, U. S. Atty., Joseph Rafferty, Asst. U. S. Atty., Washington, D. C., for defendant.

KIRKLAND, District Judge.

This suit was filed October 2, 1952, under Section 503 of the Nationality Act of 1940, as amended, 54 Stat. 1171, 8 U.S.C. § 903, now 8 U.S.C.A. § 1502, and under Rule 57 of the Federal Rules

of Civil Procedure, 28 U.S.C.A., for a declaratory judgment of citizenship.

Plaintiff was born in Decollaturo, Cantanzaro, Italy, on June 30, 1922. His mother, Maria Rosa Marchio Bruni, is an Italian citizen and still resides in Italy. His father, Benedetto Bruni, was born in Italy on July 29, 1866, but journeyed to the United States in 1886 and was naturalized as a citizen of the United States before the District Court of Douglas County, Omaha, Nebraska, on February 9, 1903. In 1914 plaintiff's father returned to Italy on an American passport and lived there until 1922. In 1928 plaintiff's father again returned to Italy on an American passport and this time remained in Italy until his death in 1945. Under Article 9(c) of the Italian Law of June 13, 1912, plaintiff's father re-acquired Italian citizenship in 1916, two years after he returned to Italy in 1914, plaintiff thus becoming a dual national at birth.[1]

Plaintiff resided continuously with his mother and father, except for the period from 1922 to 1928 when plaintiff's father was in the United States; until January 11, 1942, when he was called to active duty in the Italian army, plaintiff having been inducted on June 20, 1941, and having received leave until called to active duty. Upon entry into military service, plaintiff swore allegiance to the King of Italy, and at no time protested that he was, in fact, an American citizen. On January 19, 1942, plaintiff was assigned to the 73rd Infantry and served in Trieste until his unit disbanded on September 8, 1943. He was again called to military service in the Military District of Cantanzaro on August 5, 1944, to unload American ships at Naples under supervision of American personnel, and served until July 4, 1946, when he was given an unlimited discharge.

After his release from military service in 1946, plaintiff lived in Decollaturo, in Sarentino, and in Crosseto, and twice, in 1946 and in 1948, voted in nationwide Italian political elections. On March 31, 1950, plaintiff executed his first overt act to claim American citizenship. He applied for permission to enter the United States as an American citizen. On August 11, 1950, the Vice Consul of the United States Consulate at Naples, Italy, issued to plaintiff a certificate of loss of American nationality by virtue of plaintiff's military service in the Italian army in 1942.

Plaintiff came to Canada in 1952 and applied for a certificate of identity under Section 503 of the Nationality Act of 1940 in order to pursue his claim to American citizenship in United States courts, after having been denied entry to the United States as an American citizen by the American Consul in Niagara Falls, Ontario, Canada, in April, 1952. A suit for a declaratory judgment was filed in the United States District Court for the District of Columbia on October 2, 1952, pursuant to 8 U.S.C. § 903.[2]

Plaintiff freely admits his military service in the Italian armed forces upon two separate occasions. He testified[3] that he made no effort to avoid such service, nor did he at any time protest against the oath of allegiance to the King of Italy. No claim of United States

---

1. Weedin v. Chin Bow, 1926, 274 U.S. 657, 47 S.Ct. 772, 71 L.Ed. 1284.

2. "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States."

3. The plaintiff does not speak English and his testimony was given at the trial with the aid of an Italian interpreter.

citizenship was made by him, and at no time during his military service did he raise objection thereto on account of his American citizenship. Plaintiff contends that at the time he served in the Italian army and took the oath of allegiance to Italy and also at the time he voted in the Italian political elections, he acted without knowledge that he was entitled to American citizenship. Hence he claims that such acts were not freely nor intelligently done. Full and intelligent choice, it is asserted, is essential to effectuate renunciation.[4] Plaintiff alleges that he first became aware of his American citizenship in 1949 when an aunt, residing in the United States, sent his father's naturalization papers to Italy.

■ Having heard his testimony and the other evidence, the Court is not willing to accept this unilateral expression as true. This Court is not bound to accept testimony, even when unimpeached or not directly contradicted, against presumptions or contrary reasonable inferences from other facts in evidence.[5] From the time this plaintiff was a boy of six his father, a naturalized American citizen, lived in Italy with the plaintiff. His father returned to Italy in 1928 with an American passport. He was still living with the plaintiff when the plaintiff, by then an adult of twenty years, entered active Italian military service in 1942. Plaintiff himself testified that two of his brothers came to the United States at different times as American citizens, that one of them died and that the other brother was in communication with his family in Italy until 1939. The circumstances of plaintiff's life in Italy, plus the Court's appraisal of him as a witness, are convincing that his statement of unawareness of his claim to American citizenship until 1949 is unacceptable. His family relationships, his Italian military service, his oath of allegiance to the King of Italy, and his voting in two separate Italian political elections were all performed with a continuing awareness of his citizenship status. It is undeniably clear that plaintiff is bound by the legal consequences of his voluntary acts.[6]

■ On every occasion when plaintiff might have been expected to claim his American nationality he made no mention of it. He did not claim it even when American troops were in possession of Rome and all of southern Italy at the time plaintiff was returning to his home via Rome after being disbanded in Trieste.[7] He did not claim it when he was recalled to military service in the Italian army in 1944, although American troops and officials were in complete control of his area and Italy was, in fact, a cobelligerent at this time.[8] Nor did plaintiff lay claim to American citizenship either time he voted in Italian political elections in 1946 and in 1948, although he testified that he was forced to vote by his fear of general governmental threats to revoke ration allowances and to display names of nonvoters upon village bulletin boards. A

---

4. Acheson v. Murakami, 9 Cir., 1949, 176 F.2d 953.

5. Hamamoto v. Acheson, D.C.Cal.1951, 98 F.Supp. 904.

6. Federici v. Clark, D.C.Pa.1951, 99 F. Supp. 1019.

7. North African and Italian Campaigns

   Nov 8 1942 North Africa landing.
   May 12 1943 Africa won by Allies.
   Jul 10 1943 D-day in Sicily.

   Sep 3 1943 Italian mainland invaded. Italy signed armistice.
   Oct 13 1943 Italy became co-belligerent.
   Jan 22 1944 Anzio landing.
   Jun 4 1944 Rome won by Allies.
   Apr 30 1944 All organized resistance in Italy smashed.
   May 7 1945 Victory in Europe.

8. Italy became a co-belligerent on October 13, 1943.

report of a subcommittee of the Committee on the Judiciary House of Representatives entitled, "Loss of United States Citizenship by Voting in Italian Elections," 81st Congress, 2d Session, Report No. 1469, which declared that the political elections in Italy during the period in question were conducted in such a way that voting was compulsory, has been urged upon this Court. The document, however, is merely a report in aid of possible legislation and is not binding upon the Court. Evidence that an Italian voted in Italian elections because of fear of governmental sanctions does not amount to an involuntary or forced act so as to permit him to retain his American nationality.[9]

■■ Plaintiff bears the burden of establishing that his acts in entering the armed services of Italy, in swearing allegiance to a foreign sovereign, and in voting in foreign political elections were not voluntary.[10] He has failed to do so. The Court finds that plaintiff had knowledge that his father was an American citizen and that two brothers had come to America as American citizens. The Court further finds that plaintiff voluntarily entered Italian military service, voluntarily swore allegiance to the King of Italy, and voluntarily voted in two political elections in Italy. Upon these facts, plaintiff has expatriated himself.[11]

American citizenship is a priceless privilege, coveted by many, earned by some, and sought by most. Its shield has been enhanced by the sweat and tears and blood of Americans since the founding of our country. It should not be bandied about like a bauble and donned only when it is convenient.

The complaint will be dismissed and counsel will present a suitable order.

11. Sec. 401(c), 1940 Nationality Act, 8 U.S.C. § 801(c) (military service of a foreign sovereign), Sec. 401(b), 1940 Nationality Act, 8 U.S.C. § 801(b) (oath of allegiance to a foreign sovereign), Sec. 401(e), 1940 Nationality Act, 8 U.S.C. § 801(e) (voting in a foreign political election) now 8 U.S.C.A. § 1481(a) (3, 2, 5).

9. Cantoni v. Acheson, D.C.Cal.1950, 88 F. Supp. 576.

10. Kondo v. Acheson, D.C.Cal.1951, 98 F. Supp. 884.