Wilfred L. MILLER et al., Appellants,

v.

PENNSYLVANIA RAILROAD COM-
PANY, Appellee.

No. 14094.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 4, 1957.

Decided Dec. 26, 1957.

Mr. Sheldon E. Bernstein, Washington, D. C., with whom Messrs. Wilmer S. Schantz, Jr., Joseph D. Bulman, Samuel Z. Goldman and Charles Jules Rose, Washington, D. C., were on the brief, for appellants. Mr. Arthur S. Feld, Washington, D. C., also entered an appearance for appellant Alban Tractor Co., Inc.

Mr. James C. McKay, Washington, D. C., with whom Mr. Paul F. McArdle and Mrs. F. Carolyn Graglia, Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, FAHY and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

Appellants Miller and Alban Tractor Co. sued in the District Court for property damage resulting from a collision between a passenger train of the Railroad and Miller's motor-drawn excavation equipment at a grade crossing near Lanham, Maryland.[1] The equipment consisted of a bulldozer loaded on a "low-boy" trailer and an earth scraper connected to the trailer. These were being pulled by a truck-tractor in charge of Miller. The "low-boy" trailer swung closer to the ground than ordinary motor equipment, and the connected group of tractor and equipment was about 70 feet long and quite heavy.[2] It does not appear that Miller had any special permit to make the trip over this particular area.

As the equipment approached the crossing Miller brought it to a stop to let a train pass, moved it forward and stopped again. The crossing watchman, an employee of the Railroad, then signalled that he could go forward, and Miller did so. The tractor-truck cleared the tracks but in descending somewhat beyond the tracks the low-slung bottom of the trailer became lodged on the bed of the crossing and was thus left partially on the tracks. While efforts were under way to dislodge the equipment there is testimony that a buzzer sounded in the nearby shed of the watchman, indicating the approach of a train. The watchman took a red flag and ran up the track to warn the oncoming train, seen some ¾ of a mile away according to Miller's testimony. The train did not stop and so struck the equipment, only a minute or so after it had become stuck. This was during the daytime with "very good" light conditions.

At the conclusion of plaintiffs' evidence thus outlined the trial court on motion of the Railroad directed a verdict in its favor, on the ground there was no evidence from which the jury could find negligence on the part of the Railroad.

As the accident occurred in Maryland we must apply the law of that jurisdiction under the doctrine of lex loci delicti. Boland v. Love, 95 U.S.App.D.C. 337, 222 F.2d 27.

We agree with the District Court that the Railroad committed no negligence that resulted in Miller's position of peril. Appellants contend, to the contrary, that the Railroad was negligent in the construction of the crossing. A railroad has a duty in Maryland to construct and maintain crossings "in such manner that the same shall be safe and convenient to travelers." Whitby v. Baltimore, C. & A. Ry. Co., 96 Md. 700, 705, 54 A. 674, 676, quoting 8 Ency. of Law 363 (2d ed.). See Contino v. Balti-

1. The Tractor Company's claim is founded on its interest as conditional sales vendor.

2. For convenience we refer hereinafter to the connected tractor and equipment merely as the equipment, unless otherwise indicated.

more & A. R. Co., 4 Cir., 178 F.2d 521. The general rule.is that to fulfill this obligation a railroad need use only the ordinary and reasonable care required in the circumstances, constructing and maintaining the crossing in a condition that is safe for the usual and ordinary purposes of the public. See Missouri Pac. R. v. Hare, 194 Ark. 441, 108 S.W.2d 577; Terre Haute & I. R. Co. v. Clem, 123 Ind. 15, 23 N.E. 965, 7 L.R.A. 588; Homeland Ins. Co. v. Thompson, La.App., 12 So.2d 62; Cameron v. Northern Pac. Ry. Co., 234 Minn. 355, 48 N.W.2d 540, 545; Hickey v. Kansas City S. Ry. Co., Mo., 290 S.W.2d 58; 3 Elliott, Railroads § 1176 (2d ed.). It is true that the Maryland Code provides that a railroad shall so construct its track at a highway crossing as to afford "absolutely safe and easy approach to and crossing thereof." Md. Ann.Code, art. 89B, § 38 (1951). But in the absence of a contrary interpretation by Maryland courts we do not construe this as imposing an absolute duty except to a class of vehicles that would usually and ordinarily be expected to use the road. The Fourth Circuit in construing Maryland law on this point stated recently that "a railroad company must keep its tracks and approaches in a condition fit to meet. the demands of public travel." Contino v. Baltimore & A. Ry. Co., supra, 178 F.2d at page 524. But we think this does not make the railroad an absolute insurer of safe construction at all crossings for all traffic of whatever character. In the present case there is no evidence the crossing was unsafe for "the usual and ordinary" vehicle, and clearly a 70 foot long, 68,000 pound group of vehicles, one of which is unusually low, cannot be said to be "usual and ordinary."[3]

■ Appellants also contend the Railroad was negligent because its watchman,

before allowing the equipment to go forward, did not ascertain that it was of a character that could safely cross the tracks. Appellants cite no case, and we have found none, in support of this proposition. With one exception the general rule seems to be that a crossing watchman's only duty is to warn travelers that it is unsafe to cross the tracks because of an approaching train.[4] This finds some support in the Maryland statute requiring the use of watchmen at railroad crossings in certain circumstances. It specifies that it shall be the duty of a watchman "to give timely notice to all persons using said crossing, of the approach of all locomotives or trains," and further provides that mechanical warning devices can be used in lieu of watchmen. Md.Ann.Code, Art. 23, § 219. Circumstances of course alter cases, and we do not mean to lay down a rule of uniform application that a crossing watchman need only warn that it is unsafe to cross because of an approaching train, with the single exception noted in footnote 4. We find in the present case, however, no circumstances which imposed upon him a larger duty.

■■ But there was evidence of negligence on the part of the Railroad which presented a case for the jury. The jury could have found that in the exercise of the care required of the Railroad, the train crew could have seen the equipment stuck on the track in time to have brought the train to a stop. The Maryland courts hold that a defendant railroad is liable if it knew or should have known that a plaintiff was in a position of peril and if by the exercise of due care the railroad could have avoided the injury, though no negligence on its part contributed in any way to plaintiff being in the perilous position. Thus Maryland

---

3. Under Maryland law any vehicle or combination of vehicles over 55 feet in length or of gross weight of over 65,000 pounds is "oversized" or "overweight" and requires a special permit. Md.Ann. Code, art. 66½, §§ 80(r), 80(s), 277, 278 (1957 Cum.Supp.).

4. The exception is the duty to try to stop the train when the watchman is or should

be aware that the traveler is in a position of peril. See Baltimore & O. R. Co. v. Leasure, 193 Md. 523, 69 A.2d 248; Alabama Great Southern R. v. Anderson, 109 Ala. 299, 19 So. 516. Contra, S. E. Rand Transp. Co. v. Boston & M. R., 273 Mass. 327, 173 N.E. 547. See 74 C.J.S. Railroads § 728(b) (2) (b).

379

has held a defendant railroad liable for failing to avoid a collision,

"though it was by reason of the negligence * * * of the plaintiff that he was found in the situation of danger. In such case * * [the railroad's] failure to use due care and exertion would constitute negligence which would form the direct and proximate cause of the injury."

Kean v. Baltimore & O. R. Co., 61 Md. 154, 168. This rule has been recently applied in Baltimore & O. R. Co. v. Leasure, 193 Md. 523, 69 A.2d 248, where the defendant railroad was held liable for failing to exercise due care to discover the plaintiff's peril and avoid injuring him. This was so though the court explicitly held that no negligence of the defendant contributed to the plaintiff's position of peril, and that this resulted entirely from plaintiff's negligence. The result would be the same if, in such a situation, the question were submitted to the jury under the doctrine of the last clear chance.

From the foregoing it will be seen that we cannot accept the Railroad's position that the negligence of Miller, which it terms contributory, assuming its existence, should lead to affirmance even if the District Court erred in directing a verdict for the Railroad on the ground of its lack of negligence. For the evidence as a whole, considered with the applicable law, could have been found by the jury to have made out a case of negligence on the part of the Railroad which was the proximate cause of the injury, in the failure to bring the train to a stop when the peril of Miller was or should have been seen. Even were the jury, or this court, to find Miller guilty of negligence and thereby to have placed himself in peril, the result would be the same—though in one case it be described as primary negligence on the part of the Railroad, and in the other as its failure to meet the requirements of the doctrine of the last clear chance.

Reversed and remanded.

BASTIAN, Circuit Judge, is of the opinion that the judgment of the District Court should be affirmed.