**Charles R. MYERS and American Motorist Insurance Company, a corporation, Appellants,**

**v.**

**Frederick O. GAITHER, Appellee.**

**No. 3937.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1967.

Decided Aug. 10, 1967.

---

Benjamin W. Cotten, Washington, D.C., with whom Albert D. Brault, Washington, D.C., was on the brief, for appellants.

John J. O'Neill, Jr., Washington, D.C., with whom Robert E. Anderson, Washington, D.C., was on the brief, for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

MYERS, Associate Judge:

While appellant[1] was driving in Maryland, his car was struck from behind by a speeding automobile which then left the highway and ended in a ditch. He regained control of his car, stopped and went to the other vehicle. No one was behind the wheel, but a set of car keys was still in the ignition. A search for the driver by appellant and others was unsuccessful. By tracing ownership through its District of Columbia license plates, the Maryland police ascertained that the errant vehicle belonged to appellee. Several telephone calls to the number listed in appellee's name elicited no response. The District police were then requested to contact appellee, but they, too, were unable to reach him. Although the accident occurred about 11:30 p. m., and ownership of the auto was ascertained within an hour, it was not until about 3:30 a. m., after repeated telephone calls, that the Maryland police succeeded in contacting appellee. Upon being informed of the accident, he indicated that, as far as he was aware, his car was still parked in front of his home where he had left it earlier in the evening. He could give no explanation for its presence in Maryland or its involvement in the accident. When appellee reclaimed his impounded car the next day, he again denied any personal connection with the accident, but admitted that the keys found in the car belonged to him and that he had used them the previous afternoon.

On essentially these facts, at the close of all the testimony, the trial judge directed a verdict in favor of appellee on the ground that "the jury would be left entirely to conjecture and speculation as to who was operating [the] vehicle" at the time of the accident. This appeal ensued.

Appellant advances two alternative theories to establish appellee's liability:

first, either that appellee was in fact driving his automobile at the time of the accident or it was being driven by some other person with his knowledge and consent; or, second, that appellee, in violation of the traffic regulations, had left his car keys in the vehicle—that this violation was negligence, which permitted someone to steal the car, and that appellee is therefore liable for the consequences of his omission of care.

I

■ The first theory predicates liability upon a presumption that the operator of a motor vehicle was driving it with the owner's consent and is therefore deemed to be the agent of the owner. The presumption has been imposed by case law in Maryland. In Wagner v. Page, 179 Md. 465, 20 A.2d 164, 166 (1941), it was stated that "the operator of a motor vehicle is *prima facie* the agent and servant of its owner, but the presumption is a rebuttable one." See also cases collected at 20 A.2d at 166. In the District of Columbia this presumption is a statutory one. D.C.Code § 40–424 (1961) provides that

> Whenever any motor vehicle * * * shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

As a rule of evidence pertaining to the remedy, we apply the presumption as stated in § 40–424 and construed in the cases interpreting that section.[2]

---

1. Since appellant American Motorist Insurance Company is here involved only through its right of subrogation, "appellant" will be used in the singular and will refer only to appellant Myers.

2. The dissent states that we err in considering § 40–424 in our disposition of this case—that this constitutes an extraterritorial application of the section in contravention of *obiter dicta* contained

■ This presumption may be overcome by the uncontradicted denial by the owner. Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552 (1940). In such a case, a directed verdict is proper. However, in Hiscox v. Jackson, 75 U.S.App.D.C. 293, 294, 127 F.2d 160, 161 (1942), it was held that where the infirmities in the owner's own evidence contradict his denials, a directed verdict is no longer proper. To entitle the defendant to a directed verdict there must be "evidence which destroys all inferences and presumptions supporting plaintiff and which raises no doubts against defendant." In reversing a directed verdict for the owner, the court found that there were "inconsistencies and self-contradictions * * * [necessarily leaving] some doubts as to the absolute credibility of the witnesses." A jury determination was therefore in order. See also Conrad v. Porter, D.C.Mun.App., 79 A.2d 777 (1951), aff'd, 90 U.S.App.D.C. 423, 196 F.2d 240 (1952); Simon v. Dew, D.C.Mun.App., 91 A.2d 214 (1952).

Appellant asserts there were inconsistencies and contradictions in appellee's own evidence which entitled him to have his case submitted to the jury. He points out, for example, that although appellee testified he had been home all evening, had retired shortly before midnight, and normally had no difficulty hearing the ring of the telephone, numerous phone calls to his residence over a three-hour period immediately after the accident were not answered. The jury, appellant contends, may well have concluded that appellee was not at home until nearly 3:30 a. m. —that he was therefore either driving his automobile at the time of the accident, or at least was untruthful in his account of his whereabouts. Appellant also asks us to note that in a deposition taken more than four years after the accident appellee could not recall his activities on the night of the accident. However, at trial appellee was precise in his recollection that he had been visited about 10 p. m. by a Mr. Hendricks,

in Knight v. Handley Motor Co., D.C. App., 198 A.2d 747 (1964). *Knight* only discussed whether the District presumption of the agency relationship could be applied to a cause of action arising in another jurisdiction. It did not concern the evidentiary standards to be applied when such a presumption is interjected into the case by the jurisdiction in which the cause of action arose.

The evidentiary clause of § 40–424 (and the clause not discussed in *Knight*) provides that "the proof of ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner." This clause is a rule of evidence created by statute. The application of such a rule "to the trial of a cause of action arising in another state * * * does not operate to give the statute an extraterritorial effect." 15A C.J.S. Conflict of Laws § 22(9). In Pennsylvania Co. v. McCann, 54 Ohio St. 10, 42 N.E. 768, 31 L.R.A. 651 (1896), a statute declaring mechanical defects in railroad equipment prima facie evidence of negligence was applied to an Ohio action, even though the accident had occurred in Pennsylvania. The court stated:

No extraterritorial effect is given to a statute creating a rule of evidence by the fact that the rule is applied to the trial of a cause of action arising in another state. * * * If the tribunal of a state obtains jurisdiction of the parties and the cause, it will conduct the investigation of the facts in controversy between them according to its own rules of evidence, which is, simply, to follow its own laws within its borders. 42 N.E. at 769. See also Menard v. Goltra, 328 Mo. 368, 40 S.W.2d 1053 (1931).

Federal courts have also followed this rule when asked to apply a state evidentiary presumption, United Airlines, Inc. v. Wiener, 335 F.2d 379 (9th Cir.), cert. dismissed, 379 U.S. 951 (1964); Lobel v. American Airlines, Inc., 192 F. 2d 217 (2d Cir. 1951), cert. denied, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952), or following the federal rules when dealing with a foreign national or foreign claim, Société Internationale Pour Participations Industrielles et Commerciales v. McGranery, 111 F.Supp. 435, 444, 14 F.R.D. 44, 53 (D.D.C.1953), modified, 96 U.S.App.D.C. 232, 225 F.2d 532 (1955), cert. denied, 350 U.S. 937, 76 S. Ct. 302, 100 L.Ed. 818, rehearing denied, 350 U.S. 976, 76 S.Ct. 430, 100 L.Ed. 846 (1956).

one of his employees, and that they had watched television together until after eleven o'clock. Mr. Hendricks similarly testified that he had visited appellee and had not left until about 11:30 p. m. Appellant maintains that such a discrepancy between the deposition and the testimony at trial could reasonably be viewed by a jury as a deliberate fabrication—or, at the least, as indicative of a faulty memory. Appellant further argues that a jury might well have believed that appellee was trying to buttress his story that his auto was stolen when he testified that garden tools worth about $500, which had been in the back of his car, were missing when he went to reclaim it the following day. In varying degrees, this was contradicted by appellant, the officer, and even Hendricks, appellee's own witness. These and other inconsistencies, appellant reasons, precluded a directed verdict in favor of appellee and required the submission of the case to the jury.

■■ Appellee counters appellant's argument by maintaining that his evidence was not inherently improbable or impeached and should therefore control. Stone v. Stone, 78 U.S.App.D.C. 5, 136 F.2d 761 (1943); Perlman v. Chal-Bro., Inc., D.C. Mun.App., 43 A.2d 755 (1945). Whether impeachment, once attempted, is successful is essentially a question for the jury, Baltimore & O. R. R. v. Corbin, 73 App.D.C. 124, 118 F.2d 9 (1940), and whether appellee's evidence is uncontradicted as a matter of law must also be determined from inferences contrary to appellee's position but reasonable in the light of other evidence. Bruni v. Dulles, 121 F.Supp. 601, 603 (D. D.C.1954), rev'd on other grounds, 98 U.S. App.D.C. 358, 235 F.2d 855 (1956).

■ The factual possibilities reasonably inferred from appellant's evidence, combined with minor contradictions and possible impeachment of appellee's testimony, bring this case within Farrall v. Ellis, D.C.Mun.App., 157 A.2d 127 (1960). There the owner testified he had lent his car to his brother from whom it was stolen. We reversed a directed verdict for the owner, holding that if the proof offered by the owner contained inconsistencies and self-contradictions raising doubt as to the owner's credibility or that of his witnesses, the issue of permissive use of the automobile was one for the jury. We characterized the explanation of the owner as perhaps "absolutely true, but we [did] not think it [possessed] such 'absolute credibility' that a jury would be bound as a matter of law to accept it." For the same reasons, we believe appellant in the present case was entitled to have a jury determination of his claims.

II

At trial a Maryland police officer testified that appellee, when he reclaimed his car, stated he had locked the ignition and the doors to his station wagon but must have left the keys in the tailgate, which enabled some unauthorized person to take the car. Appellee denied any recollection of having made this statement.

On the basis of the admission attributed to appellee, that he must have left the keys in the tailgate, appellant predicates his second theory of appellee's liability—his violation of Art. XIV, § 98, of the Traffic and Motor Vehicle Regulations of the District of Columbia which provides:

No person driving, or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway.

■ The trial judge refused to admit the regulation on the ground that it was not supported by the evidence and that any conclusion reached as a result of considering the facts in the light of this regulation would be speculative. On the contrary, given the presence of the key in the car,

if appellee's evidence concerning his whereabouts should have been believed by the jury, the explanation offered by appellee, as testified to by the officer, furnishes the only non-speculative version of how the automobile became involved in the accident in Maryland. The question of whether appellee left his keys in the tailgate was properly for the jury.

■ The trial judge also ruled that § 98 would be inapplicable as the regulation demands only the removal of the key from the ignition. The plain language of the regulation lists a number of operations to be performed when leaving the car unattended: stopping the engine, locking the ignition, setting the brake. "Removing the key" logically means to remove the key completely from the car[3] so as to thwart the nefarious activities of any person tempted to steal it because of the easy accessibility of the key. The regulation was primarily intended for the protection of the public.[4] To say that it demands the removal of the key only from the ignition but not from the car doors, tailgate or any other visible position in the car would not only defeat the objective of the regulation but would be a distorted statutory construction. Clearly § 98 was relevant and should have been admitted.

### III

■ Although both Maryland and the District of Columbia hold that violation of a safety regulation presents a prima facie

case of negligence,[5] Maryland requires the plaintiff to establish, in addition to such violation, that the breach of duty has not been interrupted by a break in the chain of causation. Liberto v. Holfeldt, 221 Md. 62, 155 A.2d 698 (1959). In applying Maryland law to a similar factual pattern, a federal court has indicated that *Liberto* demonstrated the view that "the intervening actions of a thief break the causal chain leaving neither foreseeability nor proximate cause, for jury determination." McAllister v. Driever, 318 F.2d 513, 517 n. 1 (4th Cir.1963). Therefore, if Maryland law applies, the trial judge was correct in withholding from the jury appellant's theory that appellee's failure to properly secure his car as required by § 98 made him liable for the damages arising from the accident.

An opposite view is followed in this jurisdiction. Ross v. Hartman, 78 U.S.App. D.C. 217, 139 F.2d 14 (1943), cert denied, 321 U.S. 790, 64 S.Ct. 790 (1944), expressly overruled the local equivalent of the Maryland rule, stating:

Violation of an ordinance intended to promote safety is negligence. If by creating the hazard which the ordinance was intended to avoid it brings about the harm which the ordinance was intended to prevent, it is a legal cause of the harm. This comes only to saying that in such circumstances the law has no reason to ignore and does not ignore the causal relation which obviously exists in fact. * * *

---

3. In discussing a Maryland regulation, virtually identical to § 98, the Maryland Court of Appeals in Hochschild, Kohn & Co. v. Canoles, 193 Md. 276, 66 A.2d 780, 783 (1949), stated that the protection of the public

> was to be accomplished not only by turning off the motor and locking the ignition and *taking the key away,* which would make it difficult for anyone except a mechanic to start the car * * *. [Emphasis added.]

4. Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (1943), cert. denied, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944); Schaff v. R. W. Claxton, Inc., 79 U.S.App.D.C. 207, 144 F.2d 532 (1944); Bullock v. Dahlstrom, D.C.Mun.App., 46 A.2d 370 (1946).

5. Kelley v. Huber Baking Co., 145 Md. 321, 125 A. 782 (1924), and cases cited therein; Ross v. Hartman, supra note 4, and cases cited therein.

This negligence created the hazard and thereby brought about the harm which the ordinance was intended to prevent.[6]

Only in special or peculiar circumstances would such negligence not be a proximate cause of the injury as a matter of law. If the District of Columbia law is applicable in the present case, the trial judge clearly erred in refusing to permit the jury to consider this theory of liability.

## IV

The critical question then becomes: Does the law of Maryland or that of the District of Columbia apply to this case?

Appellee urges the traditional application of *lex loci delictus,* the law of Maryland where the injury occurred. We have previously acquiesced in this application. Miller & Long Co. v. Shaw, D.C.App., 204 A. 2d 697 (1964); Knight v. Handley Motor Co., D.C.App., 198 A.2d 747 (1964); Lehman v. Great Atlantic & Pacific Tea Co., D.C.Mun.App., 136 A.2d 397 (1957). See also Miller v. Pennsylvania R. R. Co., 102 U.S.App.D.C. 135, 251 F.2d 376 (1957); Ott v. Washington Gas Light Co., 205 F. Supp. 815 (D.D.C.1962), aff'd sub nom., J. H. DeVeau & Son, Inc. v. Ott, 115 U.S. App.D.C. 74, 317 F.2d 138 (1963).

In recent years various jurisdictions have applied a "contact" or "grouping of contacts" theory when faced with a conflict between the law of the forum and the law of the place of injury. See, e.g., Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Kilberg v. Northeast Airlines, Inc., 9 N.Y. 2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). The Supreme Court has recognized that a strict rule of *lex loci* is not infrequently inadequate. In Richards v. United States, 369 U.S. 1, 11–13, 82 S.Ct. 585, 592–593, 7 L.

Ed.2d 492 (1962), an action under the Federal Tort Claims Act, where the negligence occurred in one state and resulted in death in another state, the Court held:

The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of the place of injury to the substantive rights of the parties. * * * Recently there has been a tendency on the part of some States to depart from the general conflicts rule in order to take into account the interests of the State having significant contact with the parties to the litigation. We can see no compelling reason to saddle the Act with an interpretation that would prevent the federal courts from implementing this policy in choice-of-law rules where the State in which the negligence occurred has adopted it. Should the States continue this rejection of the older rule in those situations where its application might appear inappropriate or inequitable, the flexibility inherent in our interpretation will also be more in step with that judicial approach * * *. [Citations omitted.]

The Restatement (Second), Conflict of Laws § 379 (Tent. Draft No. 9, 1964) considers as important contacts, *inter alia,* the place of the injury, the place where the conduct occurred, the domicile of the parties, the place where the relationship between the parties is centered. In determining relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states. See also Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 162, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946), where it was stated:

Determination requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best

---

6. 78 U.S.App.D.C. at 218, 139 F.2d at 15 [citations omitted]. See also Schaff v. R. W. Claxton, Inc., *supra* note 4; Rob-

erts v. Lane, D.C.Mun.App., 115 A.2d 517 (1955); Bullock v. Dahlstrom, *supra* note 4.

to accommodate the equities among the parties to the policies of those states.

There has been some recent case treatment of the contacts theory in this jurisdiction. The United States Court of Appeals for the District of Columbia in Tramontana v. S. A. Empresa de Viacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 350 F.2d 468 (1965), cert denied sub nom., Tramontana v. Varig Airlines, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966), limited an airline's liability to survivor of decedent to the amount stated in a Brazilian statute on the ground that Brazil had contacts (domicile of corporate defendant, place of injury, wrongful death act creating the right of recovery relied upon, valid Brazilian interest in limiting recovery) superior to those of the District of Columbia (choice of forum, secondary place of business for corporate defendant—plaintiff was a Maryland resident[7]). In Williams v. Rawlings Truck Line, Inc., 123 U.S.App. D.C. 121, 357 F.2d 581 (1965), the same appellate court adopted a New York rule of estoppel fixing liability upon an automobile owner of record when he failed to register a change in title, although the District of Columbia, where the injury took place, follows a contrary rule. The opinion characterized the case as a "classic false conflicts situation," observing that New York policies would be thwarted by refusal to apply the New York estoppel rule but that no District policies would be weakened by its application. Recently that court in Roscoe v. Roscoe, D.C.Cir., 379 F.2d 94. (decided April 14, 1967), refused to apply the District interspousal immunity rule, applying instead the law of North Carolina, the situs of the accident. It observed that the Supreme Court in Richards v. United States, 369 U.S. 1, 82 S.Ct. 585 (1962),

deemed it desirable to preserve flexibility in the choice of law "since there may be situations where the application of the older rule 'might appear inappropriate or inequitable.' "

■ The high incidence of auto thefts in the District of Columbia,[8] the constant warnings to the public to remove keys to prevent such thefts, the frequency of high speed chases involving stolen motor vehicles, all persuade us that the District has an overriding interest in preventing such occurrences and in encouraging owners to exercise greater caution in parking their automobiles. The only contacts this case discloses which are purely Maryland are the domicile of the appellant and the location of the accident—referred to in the Kilberg case as merely "fortuitous"; while the District's contacts are domicile of the appellee, the situs of the original or primary negligence, the chosen forum, and the overriding public interest in proscribing the conduct here alleged—which contacts are indeed superior to those of any other jurisdiction. We hold that the District of Columbia law on questions of negligence and proximate cause should be applied in this case.

Reversed with directions to grant a new trial consistent with this opinion.

HOOD, Chief Judge (dissenting):

I cannot agree that Section 40–424 of the District of Columbia Code has any application to this case which concerns an automobile collision that occurred in Maryland. Section 40–424, a part of the Motor Vehicle Safety Responsibility Act of the District of Columbia, by its express terms applies only to situations where a motor vehicle is "operated upon the public highways of the Dis-

7. Cf. Armiger v. Real Transportes Aereos, D.C.Cir., 377 F.2d 943 (April 13, 1967), where, although a survivor was a District of Columbia resident, Brazil's interest was considered vital enough to compel a similar result.

8. Report of the President's Commission on Crime in the District of Columbia 97–103 (1966) states that over 5,000 automobiles are stolen every year in this jurisdiction; in almost 20 per cent of the thefts, car keys had been left in the autos stolen.

trict of Columbia." In my opinion the statute has no application to an accident occurring outside the District of Columbia. Indeed, I thought this had been settled in Knight v. Handley Motor Company, Inc., D.C.App., 198 A.2d 747, 750 (1964), where this court, speaking through Judge Myers, held that this same Code Section has no extraterritorial effect, saying: "The statutory language definitely applies the agency presumption only to the District."

The majority opinion says it is applying only the evidentiary clause of Section 40–424. I think it misconstrues the purpose of the section. Its purpose was to create a new liability by making the owner of a motor vehicle responsible for its operation whenever operated with the consent of the owner. This was a change of substantive law. There has been no such change in Maryland where the law still is that the "mere fact that the owner has given permission to the driver to use his car is not enough to make him liable." State, Use of Shipley v. Walker, 230 Md. 133, 186 A.2d 472, 473–74 (1962). What the majority calls the "evidentiary clause" of Section 40–424 is an essential part of the Section for proving the vital issue of consent and is not a general rule of evidence.

I agree that in a trial in this jurisdiction our rules of evidence apply even though the accident occurred beyond this jurisdiction, but the controlling substantive law is that of the place where the accident occurred. See Molinaro v. Scott Brothers, Inc., 97 U.S. App.D.C. 199, 229 F.2d 773 (1955). Our general rule of evidence applicable here was established long before the enactment of Section 40–424. In Curry v. Stevenson, 58 App.D.C. 162, 163, 26 F.2d 534, 535 (1928), it was said:

It has come to be the general rule that, in an action for injuries resulting from

being struck by an automobile, proof that the automobile was owned by the defendant at the time of the accident establishes a prima facie case for the plaintiff. In other words, proof of defendant's ownership of an automobile that has been driven on the public highway warrants the inference that it was in his possession, either personally or through his servant, the driver, and that the driver was acting within the scope of his employment.

The same general rule applies in Maryland. See Hoerr v. Hamline, 219 Md. 413, 149 A.2d 378, 381 (1959), where it was said that "there was a presumption that whoever was driving the truck was the agent, servant or employee of its owner acting within the scope of his employment." Thus there is no conflict between the general rule of evidence in Maryland and the District, and if the majority opinion had placed its reliance on the general rule, perhaps I could agree that appellant's prima facie case was not overcome as a matter of law by uncontradicted and conclusive evidence. I cannot, however, agree that our Code Section 40–424 has any application to this case.[1]

With respect to the second theory of liability, the majority opinion concedes that even if appellee were negligent in not removing the car keys, there could be no recovery under Maryland law. It seeks to apply District of Columbia law because, it says, the case has more important contacts with the District. The accident occurred in Maryland and a resident of Maryland was the injured party. I know of no more important contacts. This is no case for "choice of law." We should follow our previous decisions and apply Maryland law. If the majority opinion stands, the trial court hereafter in every case claiming negligence in another jurisdiction will be faced with the question of what law is applicable, and will have no definite guidelines to an-

---

1. Even if Section 40–424 had any application here, it could not come into play until there had been a determination that appellee was not the driver of his automobile, because this section applies only when the motor vehicle is operated "by any person other than the owner." See Judge Myers' dissent in Joyner v. Holland, D.C.App., 212 A.2d 541 (1965).

swer the question. Incidentally, it may be noted that only recently Maryland has rejected the choice of law rule. See White v. King, 244 Md. 348, 223 A.2d 763 (1966).